# CASES

IN THE

# SUPREME COURT OF ILLINOIS.

## THIRD GRAND DIVISION.

### APRIL TERM, 1865.

LINEY BLUE

*v.*

CYRUS H. BLUE *et al.*

38 9
152 379

1. PURCHASER—*has notice of rights declared by a decree, and holds subject to them.* Where the rights of a party in lands are declared in a decree in chancery, third persons are chargeable with notice of those rights, and a subsequent purchaser will hold the property subject thereto.

2. So where a tract of land which a husband held under a contract of purchase, was set apart as alimony to his wife, upon a decree for a divorce, a subsequent assignment of the contract by the husband and a conveyance from the original vendor to the assignee, would not at all impair the rights of the wife; the grantee was chargeable with notice of the wife's rights under the decree, and while he held the legal title, he would be compelled in equity to convey it to her.

3. INCUMBRANCE—*rights of a third person who removes it—of the lien thereby acquired.* Where a part of a tract of land is allotted to the wife as alimony, and it is decreed, that as between the husband and wife, certain incumbrances upon the land shall rest exclusively upon the portion reserved

2—38TH ILL.

to the husband, if the wife, to protect her interests should discharge a por-
tion of the incumbrance, she would have a lien upon the husband's portion
to secure the refunding of the money paid.

4. So if the incumbrance consisted of unpaid purchase money upon the
land, and the wife paid a small portion of it to prevent a forfeiture of the
contract under which it was held, that would give her a lien, but would not
entitle her to a conveyance of the entire land.

5. Nor would her claim to a conveyance of the whole of the land, under
such circumstances, be at all strengthened by the consideration that the
interest reserved to the husband by the decree fixing the alimony, was only
a life estate, with remainder in fee to their children.

6. If she were compelled, however, to pay all the purchase money, to
protect her rights, it would be otherwise; she would then be entitled to a
conveyance for all the land.

7. FRAUD—*its effect upon the rights of the party committing it.* A party, by
an attempt to defraud another, does not incur a forfeiture of his property to
the person upon whom he attempts to perpetrate the fraud.

8. So in the case of the allowance of alimony to the wife, out of a tract
of land which the husband held merely under a contract of purchase, if the
husband should assign his contract of purchase to a third person with intent
to defraud the wife out of her rights, the assignee participating in that
intent, and the vendor should convey to the assignee, the latter would hold
subject to the wife's rights, but there would be no forfeiture of the interest
in the land which had been reserved to the husband.

9. PARTIES, *alone, are affected by a decree.* A decree cannot be rendered in
favor of one who is not a party to the suit, nor can his rights be in any
manner affected thereby.

10. HOMESTEAD RIGHT—*to what character of estate it may attach.* One who
holds the equitable title to land under a contract of purchase, is the owner
thereof, within the meaning of the homestead law; he holds that character
of estate to which a homestead right may attach, and which will be pro-
tected from levy and sale as against third persons.

11. Whether the debtor holds in fee simple, for life or for a term of
years, the reasons for affording the exemption applies with equal force.

12. SAME—*of forfeiture thereof by acts of the husband.* The fact that the
husband may have committed adultery will not operate as a forfeiture of his
homestead right. A forfeiture of his right would also defeat that of the
wife, when no act of his can have that effect.

13. In this case the householder and his family were residing upon the
premises at the time of their sale under execution. There was no release of
the homestead. Subsequently the wife obtained a divorce upon the ground
of adultery on the part of the husband. But no forfeiture was incurred of

the right to assert the homestead exemption as against the purchaser under the execution.

14. SAME—*of the excess over one thousand dollars—lien thereon.* In case of a sale of a homestead under execution, when the premises are of value exceeding one thousand dollars, and no release has been made of the homestead right, the purchaser will have acquired an equitable lien upon the surplus which he may enforce as soon as the premises cease to be a homestead.

15. And upon a sale of the premises by such purchaser, the lien will pass to his grantee.

16. COSTS IN CHANCERY—*how far discretionary.* Where a suit in chancery is disposed of by the court upon a final hearing, the costs are awarded within the discretion of the court.

APPEAL from the Circuit Court of Woodford County; the Hon. SAMUEL L. RICHMOND, Judge, presiding.

This was a suit in chancery instituted in the Circuit Court of Peoria County, by Liney Blue against Cyrus H. Blue, Washington Wakefield and William R. Phelps, and afterwards, the cause was removed into the Circuit Court of Woodford County, on change of venue.

The facts of the case, as developed in the pleadings and evidence, appear to be as follows: On the 26th day of January, 1854, William R. Phelps entered into a contract with Cyrus H. Blue, whereby Phelps sold to Blue the S. ½ N. W. ¼ of Section 35, T. 11, N. 8 E. situate in Peoria County, for $700, $175 to be paid on the 20th day of March in each of the years 1854, 1855, 1856 and 1857, with interest at six per cent. payable annually, upon the payment of which, together with certain taxes, Phelps was to convey.

Soon after the making of this contract Blue took possession of the premises, and made payments as follows, to wit: March 2, 1854, $100.    April 10, 1854, $50.    December 9, 1854, $100. March 31, 1855, $75.    May 26, 1856, $185.    March 21, 1857, $130.

On the 25th of July, 1857, James L. Riggs and Amos L. Merriman recovered a judgment against Blue before a justice

of the peace in Peoria County for the sum of $25 and costs. An execution being issued thereon and returned "no property found," a transcript of the judgment was filed in the office of the Clerk of the Circuit Court of Peoria County on the 10th of December, 1857.

On the 17th of the same month an execution upon such transcript was issued from the clerk's office, which was levied on the 23d of December, upon the land already mentioned, together with the N. E. ¼ of the N. W. ¼ of Section 34, in the same township; and on the 30th of January, 1858, the lands thus levied upon were sold, and Merriman, one of the plaintiffs in the execution, became the purchaser, and obtained a sheriff's deed therefor on the 28th of November, 1859.

At the time of the levy and sale mentioned, Blue was residing with his family, upon the land he had purchased from Phelps, as their homestead.

On the second day of July, 1859, Liney Blue, the wife of Cyrus H. Blue, obtained a decree for a divorce from her husband, upon the ground of adultery ; the decree also enjoining Blue from incumbering or disposing of the 80 acres of land he had purchased of Phelps, and another tract which he seems to have owned, the S. E. ¼ of the N. W. ¼ of Section 34, in the same township; reserving the question of alimony and the care and custody of the children for further direction.

On the 19th of December following, a decree for alimony was rendered, which found that Blue was not a suitable person to have the care and custody of the children; that Mrs. Blue was a proper person to have the care and custody of them; that the S. ½ of S. W. ¼ 35, and the S. E. ¼ of the N. W. 34, were of the value of $2,500, subject to incumbrance of $1,300, and the title not perfect; that the same could not be apportioned or divided, and that in case the court should decree a sum of money as alimony, no means could be resorted to to enforce the collection thereof; it was therefore decreed that the mother have the custody of the children, and that she should take and hold said premises until the further order of

the court, and the sole and exclusive possession and occupancy and control thereof, and of the house and appurtenances therein and thereto belonging, and all household and kitchen furniture therein, as her reasonable alimony, and that Blue be restrained and enjoined from entering upon, using and enjoying, or in any wise meddling with or incumbering said premises or personal property until the further order of the court.

On the 15th of December, 1860, it was further decreed in the same cause, by consent and agreement of the parties thereto, that Mrs. Blue should have and hold for her natural life, twenty-five acres, part of S. $\frac{1}{2}$ of N. W. 35, and ten acres in a square form out of the S. W. corner of the S. E. $\frac{1}{4}$ of N. W. 34, with full right and power to lease, mortgage and convey the same for and during the term of her natural life, as she might see proper, and upon her death the same should vest in her children in fee; and by the consent and agreement of the parties it was further decreed that said Blue should hold the remainder of said tracts for life, with remainder over to their children in fee, with full power in Blue to sell, mortgage and convey his life estate in the same, and that as between themselves the incumbrances on said real estate should be thrown on that part assigned and set off to said Blue, so that Mrs. Blue should have and hold her thirty-five acres free of incumbrance.

Soon after the rendering of this decree Mrs. Blue entered into the possession of the land so set off to her. In the meantime, as has been seen, Merriman had obtained his sheriff's deed to the land purchased by Blue from Phelps, and Mrs. Blue, with the view of protecting her interests, purchased from Merriman his interest therein, which, together with the N. E. $\frac{1}{4}$ N. W. $\frac{1}{4}$ Section 34, he conveyed to her by deed on the 17th of December, 1860.

On the 16th of March, 1860, Blue paid on the Phelps contract $130, leaving an unpaid balance at the time of the last decree above mentioned.

After the making of that decree, Mrs. Blue, for the purpose

of preventing a forfeiture of that contract, and to protect her own interests in the land, paid to Phelps on the same, the sum of $37.

Afterwards, on or about the 4th day of April, 1862, Blue assigned the Phelps contract to his brother-in-law, Washington Wakefield, so far as appears, without any consideration, and for the purpose of defrauding Mrs. Blue out of her rights as determined in the decree for alimony. At the time of making this assignment Blue paid to Phelps the balance of the purchase money for the land, and induced him to convey the same by deed to Wakefield, on the 5th of April, 1862.

The complainant, Mrs. Blue, alleges that she is entitled to all the right, title and interest which Blue had in the land. at the time of the levy of the execution in favor of Riggs and Merriman, and that Blue and those claiming title through him, ought not to be permitted to set up any other title to the same.

She also alleges that the conveyance to Wakefield is not only in fraud of her rights, but also a cloud upon her title acquired through the deed to her from Merriman.

The complainant prays for an injunction against Blue and Wakefield, restraining them from in any way interfering with her possession, and from commencing or prosecuting any suit or suits against her for the recovery of the land. She also prays that the deed from Phelps to Wakefield be set aside, and that Phelps be decreed to convey the whole of the land in fee simple to her, and for general relief.

The answers of the defendants were filed, and in April, 1863, they filed their amended answer, alleging that at the time of the rendition of the judgment against Blue, and sale, and for a long time previous thereto, said Blue was the head of a family, residing therewith, consisting of a wife and several children, and resided and occupied the said premises and the house and premises thereon situated, as a homestead—that he took possession of the same as a homestead, in the year 1853, and continued to occupy and reside thereon continually as such homestead at all times thereafter, and still does,

together with all buildings thereon, with his said wife and family, at all times as aforesaid, and did so occupy said premise as such homestead at the time of the rendition of said judgment, and the issuing of such execution and sale thereof to said Merriman, and at all times since he took possession thereof; that the same was levied upon and sold without the knowledge of Blue, and without any release under said execution, and upon a debt that arose and was contracted after the 4th day of July, 1851; that said judgment was not a lien thereon, and that Blue was at liberty to sell the same at any time free from said judgment, execution and sale.

At the August term, 1864, a decree was rendered, finding the material facts as set forth, and that as to the twenty-five acres set off to the complainant as alimony, under the decree of December 15th, 1860, the equities were with her; and directing that Wakefield should, within thirty days, make her a deed therefor, to have and to hold during her natural life, with the remainder to the children in fee, and in default of his making such deed, that the Master should make the same; and enjoining Blue and Wakefield, perpetually, from interfering in any way with the possession of the complainant, and from setting up the deed from Phelps to Wakefield in any court or place to her prejudice. It was further decreed that as to all other relief prayed for, the complainant take nothing, and that she pay one-third of the costs of the suit.

From that decree the complainant took this appeal, and assigns the following as errors:

1st. The court erred in not decreeing all the relief prayed for.

2d. The court erred in not setting aside the deed from Phelps to Wakefield as to all of said land.

3d. The court erred in not decreeing the whole of said land to appellant in fee.

4th. The court erred in not decreeing the whole of said land to appellant for life, with remainder to the children of her and said Blue.

5th. The court erred in finding the land exempt under the homestead act, from sale under the Riggs-Merriman judgment.

6th. The court erred in decreeing appellant to pay one-third the costs.

Messrs. McCulloch & Taggart for the appellant.

Messrs. Johnson & Hopkins for the appellees.

Mr. Chief Justice Walker delivered the opinion of the Court:

The question of alimony had been settled, and each party had assigned to them portions of the property, to hold in severalty. Neither had any claim to that held by the other. It is true that the portion held by Blue was charged with all of the incumbrances upon the whole of that tract. This imposed the obligation upon him to remove the incumbrance upon the portion assigned to appellant. Nor could he escape that liability by having it conveyed to any other person. Nor did Wakefield acquire any lien upon the property by simply having the conveyance made to him, as there does not appear to be any evidence that he paid a consideration for the property; and it has every appearance of a fraud upon the rights of appellant.

But even conceding that he paid a consideration for the conveyance from Phelps, he took it subject to the rights of appellant under the decree, as he is chargeable with notice of the decree and its provisions. Being chargeable with notice of the decree, he could by an assignment of the contract by Blue and a conveyance from Phelps, acquire no better title to appellant's portion of the premises than was held by Blue. He acquired nothing but the mere legal title to appellant's portion of the land, and is in equity bound to convey it to her. In so decreeing the court below committed no error.

We are unable, however, to understand upon what principle

Wakefield was bound to convey the remainder of the tract to her, or that she should have the estate in that portion in fee or for life. If she contributed to remove the incumbrance from the land, to protect her own interests, she has no doubt a lien upon the portion set apart to Blue, to have it refunded, but the payment of thirty-seven dollars for that purpose could not entitle her in equity to property costing near a thousand. It cannot be said, and we presume it will not be contended, that if one person attempts to defraud another, however immoral and reprehensible the act, such person forfeits his property to the other.

Had appellant been compelled to pay all of the purchase money on the contract, to protect her rights, it would be otherwise, not because the fraud was attempted, but because she had paid the purchase money for the land. But to say that because she had paid thirty-seven dollars of the purchase money, on a purchase of land for so large a sum, gives her the right to have the title to the whole property, would be as inequitable as to permit Blue to defeat her title by assigning the contract. If the sum she claims to have paid, was applied to the purchase she has a right to have it refunded, and the court below should have ascertained that fact and decreed accordingly.

If the right to have it conveyed to her is based upon the ground that the children are entitled to the remainder, it is equally untenable. Blue was entitled to hold his portion for life, and he did not forfeit that right to her by attempting to cut off their estate in remainder. If the children were to file a bill, they no doubt could, on a proper showing, have their rights established and protected, but they are not parties to this bill, and the court for that reason was not authorized to render a decree in their favor. Nor does this decree or any other which the court might have rendered, so long as they are not parties, affect their rights. As to this tract, we see no reason for reversing the decree of dismissal.

If this transcript is correctly copied, one forty acre tract of land was levied upon and sold, whilst a different tract was con-

veyed by the sheriff to Merriman. The levy and certificate of purchase describe the land as the N. E. qr. of the N. W. qr. of section 34, and the sheriff's deed to Merriman and his deed to appellant, convey the S. E. of the N. W. qr. of the same section, and the decree setting apart appellant's alimony, follows the latter description, so that be the true description as it may, no title to this tract was vested in Merriman by the sale under execution, nor did his conveyance to appellant pass any title.

The eighty acre tract seems to have been truly described and passed the title unless it was exempt from such a sale under the homestead law. At the time the levy and sale were made, Blue held the bond for a title, had paid a portion of the purchase money, was the head of a family residing with them upon the land, using and occupying it as a homestead. On the one side it is claimed that this was such a title and homestead as exempted it from levy and sale, whilst the other insists that he was not the owner within the meaning of the statute. He had such an interest in the land as the statute has rendered liable to levy and sale on execution, unless protected by the homestead law. (Scates' Comp. 602.)

When the reason for the adoption of the homestead law is considered, no reason presents itself to our minds, why it should not be exempt. The object in adopting the act was to secure to the debtor and his family a home, not worth more than one thousand dollars. Such a case as this falls fully within the mischief of the old, and is clearly within the reason of the new law. And whether the debtor held in fee simple absolute, for life or for a term of years, the reason for affording the exemption applies with equal force. Here Blue was rightfully in possession, under a contract of purchase, and we think was the owner within the meaning of the statute.

It is, however, objected that there is no evidence to show that this tract was worth only one thousand dollars or less. This cannot vary the result, as if it was not worth more than that sum the sale was prohibited by the statute, and if worth

more, then none of the requirements of the statute were observed in making the levy and sale. So that in either view the sale was unauthorized.

It is, again, contended that the husband, by committing adultery, forfeited his right to claim the benefit of the homestead law. We are referred to no law or adjudged case announcing such a rule, nor is it believed that any such exists. Nor can we see how a stranger to the estate could be benefitted by his infidelity to the marriage contract, even if he had suffered a forfeiture. If such a forfeiture was created in this case it operated to defeat the wife's right to claim the homestead as well as his. And the law has clearly placed it beyond the power of the husband to deprive the wife of that right so long as it remains their residence, and it was such when the levy and sale were made.

If this piece of land was worth over one thousand dollars, Merriman by his levy and sale acquired an equitable lien upon the surplus, which he had the right to enforce as soon as it ceased to be a homestead. And when appellant purchased of Merriman she acquired the lien and may enforce it against such surplus. The court below should have ascertained the value of this property, and if it exceeded one thousand dollars, he should have declared the amount paid by appellant to be a lien on the surplus, and decreed its payment out of the portion assigned to Blue, as it had been previously, by the agreement of the parties and the decree of the court, charged with all incumbrances, and in default of payment the property should be sold, subject to the rights of the children.

The last error assigned questions the correctness of the decree requiring appellant to pay one-third of the costs. In such a case that is purely a question of discretion in the court. By the 15th Section of the cost act (R. S. 128) it is declared, that upon the dismissal of the bill by complainant, or by defendants dismissing it for want of prosecution, the defendant shall recover of the complainant his full costs; but in all other cases in chancery, not otherwise directed by law, it shall be in

the discretion of the court to award costs or not as shall be just. This was on a final hearing, and we have been referred to no law, nor are we aware of any, that has provided how the costs on such a hearing shall be awarded, hence, by this section it is a matter of discretion.

Inasmuch as appellant paid thirty-seven dollars to Phelps, to prevent a forfeiture of the contract for the eighty acre tract, the court below should have rendered a decree for that amount at least, and failing in this, there was error in the decree, which must be reversed and the cause remanded.

*Decree reversed.*