Argued February 6, affirmed April 16, 1929.

## MARVIN & COMPANY v. JOE PIAZZA.
## MARVIN & COMPANY v. ANTONINO PIAZZA.

(276 Pac. 680.)

For appellant there was a brief over the name of *Mr. Bert S. Gooding,* with an oral argument by *Mr. Robert R. Rankin.*

For respondents there was a brief over the name of *Messrs. Lord & Moulton,* with an oral argument by *Mr. Arthur I. Moulton.*

RAND, J.—Plaintiff commenced two actions in the Circuit Court for Multnomah County, one against Joe Piazza, the other against Antonino Piazza, each seeking to recover a money judgment. A writ of attachment in each case was issued and the alleged interests of defendants as tenants in common in two lots in the City of Portland were attached. Defendants made default and plaintiff had judgment and order for the sale of the attached property in each action. Execution was thereafter issued and the property sold but before the sale thereof the defendants notified the sheriff that the two lots had been partitioned under a parole agreement of the owners and that each defendant claimed the part allotted to him as a homestead and exempt from execution. After the receipt of the notice, the sheriff refused to proceed further in the sale of the property until he had been indemnified by an undertaking executed by plaintiff. The property was then sold and after the expiration of the time provided by law, plaintiff applied to the court for an order confirming the sales. Defendants objected thereto and, after a hearing thereon, the court refused to confirm either sale. From these orders plaintiff has appealed and the two cases on appeal have been consolidated by stipulation of the parties. Except for the difference in the description of the properties claimed as exempt, the facts are substantially identical in each case.

The lots in question, parts of which are claimed as homesteads, are lots 5 and 6, block 19, Tibbitt's Addition in the City of Portland, and comprise a tract of

land one hundred feet square located on the corner of the block fronting on East 17th and Clinton Streets. There are four dwelling-houses on said lots, two of which are in the separate occupancy of the defendants. These lots, together with the four dwelling-houses, were purchased many years ago by defendants' deceased father and his brother, Ignazio Piazza. The father died on December 2, 1918, leaving a widow, Marina Piazza, a daughter, Dorothy Piazza, and the two defendants as his sole heirs at law, who, upon his death, became vested with an undivided one-half interest in the property by operation of law. Subsequently and about January, 1923, Ignazio Piazza conveyed the other undivided one-half interest in the lots to the four Piazzas. Shortly thereafter, the mother and her three children entered into a parol agreement to partition the property among themselves and carried said agreement into execution by allotting to the mother the house which fronts on East 17th Street, together with a strip of ground 100 feet in depth and 37 feet in width along the south boundary of the tract, and allotting to Joe Piazza the corner house facing on Clinton Street together with a tract of land 33⅓ feet in width and 63 feet in depth, and to Antonino Piazza the middle house fronting on Clinton Street, together with a strip of land 33⅓ feet in width and 63 feet in depth, and to Dorothy Piazza the remainder of the tract together with the dwelling-house thereon.

The evidence shows that each of said allottees took possession of the particular house and premises allotted to him, and has ever since remained in the possession thereof and exercised exclusive dominion thereover, and that both defendants are residing with their families upon the respective premises allotted

to them and have been so residing and using the same as their actual place of abode since long prior to the commencement of the actions referred to and that ever since said parole partition they have .been holding their respective premises in severalty. The evidence further showed that one of said defendants had expended money in the permanent repair and improvement of the house which had been allotted to him.

It is not contended that the premises allotted to either of the defendants or to the mother or daughter exceeds in value the sum of $3,000 or that the premises allotted to defendants are not the actual abodes of defendants and their families, but it is contended that the entering into by the Piazzas of a parol agreement to partition the land, even though followed by a part performance sufficient to take the case out of the statute of frauds, was not sufficient to change defendants' legal title as tenants in common in the entire tract into a several ownership of a part and it is also claimed that a tenancy in common in lands is not a sufficient estate or interest in the land to support a homestead and from this it is argued that defendants' interest or estate in the two lots as tenants in common was not exempt from execution. We think that this contention cannot be sustained.

■ ■ A homestead right is not an estate in land but a mere privilege or exemption of such an estate as the holder has in the land: *Mansfield* v. *Hill*, 56 Or. 400 (107 Pac. 471, 108 Pac. 1007). Our statute, Section 221, Or. L., uses the term "owner" in defining the person who shall be entitled to a homestead exemption but it does not define the word "owner" or require that the homestead claimant shall be the

absolute owner in fee of the land. There is abundant authority for holding, and we think that the rule is supported by the great weight of authority, that under a statute as broad as ours a tenant in common may acquire a homestead exemption in lands of which he is a cotenant only if the land claimed as a homestead is occupied by him as his actual abode and place of residence and that his homestead right does not depend upon the character or extent of the estate owned by him, provided he is not a mere intruder: 29 C. J., p. 848, § 164, and authorities there cited; 13 R. C. L., p. 566, § 30; Freeman on Cotenancy and Partition (2 ed.), § 54; Thompson on Homesteads and Exemptions, 1878 ed., § 180.

██ That defendants were in the several possession and occupancy of the parts allotted to them as the actual abodes of themselves and families prior to the commencement of the actions in question was not disputed. Such possession and occupancy was sufficient to make the premises so possessed and occupied a homestead, and, being homesteads, such parts were exempt from execution. The sales in question were defendants' undivided interests as tenants in common in all or both lots and hence, include their homesteads. It could not have been confirmed without including the parts of the two lots which constituted the homesteads of the defendants. When application was made to the court to confirm the sales, the only action the court could have taken was either to reject or confirm the sales. It could not modify the terms of the sale or confirm the sales as to a part and reject it as to the remainder. It was obliged either to accept and confirm as a whole or to reject as a whole and if vacated to direct that another

sale be made.   See 2 Freeman on Executions (2 ed.), § 311.

■ But we do not base our decision upon those grounds alone for we are satisfied from the evidence that a voluntary parol contract to partition the land was actually entered into and that, in pursuance thereof, the land was partitioned and each of the owners, with the full knowledge and consent of the others, entered into possession of the parts allotted to him and has ever since held the same in severalty and that, in reliance upon said parol partition, one of such allottees has expended money in making permanent repairs and improvements upon the dwelling-house which had been allotted to him.

■ While it is true that the parties to this contract were near relatives, a mother and her children, and that his relationship in the absence of a contract of the character claimed might be sufficient to explain a separate occupancy by the parties to the contract of the parts of the joint property, it is not sufficient to explain an individual expenditure made by one without a charge being made against the others in the permanent improvement and repair of one of the buildings if the same was held in joint ownership. Such an individual expenditure is inconsistent with a joint ownership and is referable only to a contract of the kind and character claimed and, when coupled with the taking of possession and a holding in severalty by the parties, it constitutes we think a sufficient part performance of the parol agreement to take the case out of the operation of the statute of frauds and to vest in the allottees the equitable title to the parts allotted to them and would entitle them to a specific performance of the contract.   In deciding the rights growing out of a parol partition of land,

the court, in *Tomlin* v. *Hilyard,* 43 Ill. 300 (92 Am. Dec. 118, 119), said:

"A parol partition between tenants in common, when followed by a possession in conformity therewith, will so far bind the possession as to give to each co-tenant the rights and incidents of an exclusive possession of his property: 1 Washburn on Real Property, 2d ed., 450; *Jackson* v. *Harder,* 4 Johns. [N. Y.] 202 (4 Am. Dec. 262); *Jackson* v. *Vosburgh,* 9 Johns. [N. Y.] 276 (6 Am. Dec. 276); *Slice* v. *Derrick,* 2 Rich. [S. C.] 627; *Coles* v. *Wooding,* 2 Pat. & H. [Va.] 189; *Wildley* v. *Bonney,* 31 Miss. 644; *Hanly* v. *Pettee,* 38 Ill. 136. While the legal title might not perhaps be considered as passing by such parol partition, unless after a possession sufficiently long to justify the presumption of a deed, yet the parol partition followed by a several possession would leave each co-tenant seized of the legal title of one-half of his allotment, and the equitable title to the other half, and by a bill in chancery he could compel from his co-tenant a conveyance of the legal title, according to the terms of the partition. The homestead law protects a possession held under an equitable as well as a legal title: *Blue* v. *Blue,* 38 Ill. 9 (87 Am. Dec. 267). If, then, in the case before us, there has been a parol partition before the judgment lien attached, and a several possession in conformity thereto, the homestead right can be claimed by Hilyard, even if the legal title to one-half of his allotment is still in his co-tenant. He has held it since the partition merely as trustee for Hilyard."

■ ■ It follows from what has been said that not only are the defendants the equitable owners of the parts allotted to them but also that Marino Piazza, the mother, and Dorothy Piazza, the daughter, are likewise equitable owners of the parts allotted to them and are entitled, as against the others, to a conveyance of the legal title. Under such circumstances none of the Piazzas had any beneficial ownership in

any part of the two lots except in the particular part allotted to him. That an equitable title to land is sufficient to support a homestead seems to be settled with but little, if any, conflict of authority. It was held in *Tomlin* v. *Hilyard, supra, Blue* v. *Blue,* 38 Ill. 9 (87 Am. Dec. 267), and *Perry* v. *Adams,* 179 Iowa, 1215 (162 N. W. 817), that the homestead law protects a possession held under an equitable as well as a legal title. To the same effect see 13 R. C. L., p. 569, § 32; 29 C. J., p. 843, § 147, and cases there cited; Thompson on Homesteads and Exemptions, §§ 170–173; Freeman on Cotenancy, § 255. Hence, no part of these two lots, whether in the possession of the defendants or otherwise, was subject to attachment unless the plaintiff, at the time of the attachment, would have been an innocent purchaser for value and without notice if he had bought the property outright instead of attaching the same. Under Section 301, Or. L., from the date of the attachment until it be discharged and the writ executed, the plaintiff as against third persons shall be deemed a purchaser in good faith and for a valuable consideration of the property attached, subject to the conditions prescribed in Section 302, Or. L. While, as we have stated, there was nothing of record to give notice that the Piazzas were holding the property in severalty, yet under the circumstances shown the plaintiff could not have been a purchaser in good faith and for value at the time the attachment was made for the very occupancy of the premises was constructive notice of the rights and equities of the parties, and the simplest inquiry upon the part of either the sheriff or plaintiff of the persons in possession of the premises would have disclosed the separate equitable ownership of each. The Piazzas

at the time were in the actual, open, visible and exclusive possession of their respective parts of the two lots in question and were at the time rightfully in possession and this possession was constructive notice to plaintiff of whatever estate or interest in the land the occupants had to the parts they were occupying.   Under such circumstances, the rule is:

" * * Whenever a party, dealing as purchaser or encumbrancer with respect to a parcel of land, is informed or knows, or is in a condition which prevents him from denying that he knows, that the premises are in the possession of a third person, other than the one with whom he is dealing as owner, he is thereby put upon an inquiry, and is charged with constructive notice of all the facts concerning the occupant's right, title, and interest which he might have ascertained by means of a due inquiry." 2 Pomeroy's Equity Jurisprudence (3 ed.), § 615.

But independently of constructive notice, the evidence very strongly shows that plaintiff had actual knowledge before the commencement of the actions of defendants' several possession and occupancy of the premises as well as that of their mother and sister for the evidence shows that one of plaintiff's officers and managing agents was a frequent visitor in the homes of the Piazzas and that he had been informed that the two lots had been partitioned and that these lots were being held in severalty by the Piazzas.

For these reasons, the orders appealed from must be affirmed.                    AFFIRMED.

CoSHOW, C. J., and McBRIDE and ROSSMAN, JJ., concur.