Argued October 24, 1930; affirmed March 17; motion to modify
opinion granted April 28; motion to recall mandate
denied July 28, 1931

IN RE BANFIELD'S ESTATE
BANFIELD *v.* SCHULDERMAN ET AL.
(296 P. 1066, 298 P. 905)

*Albert L. Gordon,* of Portland, for appellant.
*A. C. Shaw,* of Portland, for respondents.
*Julius Silverstone,* of Portland, amicus curiae.

BROWN, J. Webster's International Dictionary defines "homestead" as:

"The land and buildings thereon occupied by the owner as a home for himself and his family, if any, and more of less protected by law from the claims of creditors. The right of exemption is purely statutory and does not exist in Great Britain, but is given by statute in nearly all the states of the United States."

The meaning of "owner," as used above, is set out in 2 A. L. R., 794, note, in the following language:

"The owner of a life estate in land, as well as the owner of the fee therein, may be considered as the owner within the meaning of the Homestead Act providing for the exemption from levy [of the land]."

■■ The courts have often declared that homestead laws are enacted as a matter of public policy, in the interest of humanity: 29 C. J., 782. However, homestead statutes are subject to the established rules of construction applicable to all laws. When the import of words, either ordinary or technical, is obvious, plain and easily understood, there is no occasion for construction or interpretation: Waples, Homestead and Exemption, p. 2. That author likewise says, at page 109, that the owner of land for a lifetime occupying the premises lawfully is the lord of the manor while he lives.

■ Marie Banfield devised to her husband, the petitioner herein, a life estate in her real property. It is settled law in this jurisdiction that the holder of a life estate may have a homestead carved out of it. See *Marvin & Co. v. Piazza,* 129 Or. 128 (276 P. 680). That the petitioner has title sufficient to support a

homestead claim is established by the decisions of this court and in many other jurisdictions. See *Marvin & Co. v. Piazza,* supra.

The petitioner bases his right to have the property herein set off as a homestead upon chapter 345, General Laws of Oregon, 1927. This chapter was House Bill No. 509, and was introduced by a capable attorney, to amend sections 225 and 226, Oregon Laws, and section 1234, Oregon Laws, as amended by chapter 263, General Laws of Oregon, 1923.

■ For an interesting and illuminating discussion of the homestead law, we direct attention to *Leet v. Barr,* 104 Or. 32 (202 P. 414, 206 P. 548) ; *Slattery v. Newell,* 115 Or. 22 (236 P. 268) ; *Overland v. Jackson,* 128 Or. 455 (275 P. 21) ; *In re Estate of Brizzolari,* 129 Or. 307 (275 P. 17). See, also, Oregon Code 1930, § 3-201, et seq. It is the duty of this court to apply the act in its entirety. Every section, sentence and word has a meaning; and the language of the act appears to be plain.

The Oregon Homestead Act (chapter 345, Gen. L. of Or., 1927) provides that the homestead shall be charged with the expenses of the last sickness and the funeral of the deceased, and the costs and charges of administration. By section 2 thereof, codified as Oregon Code 1930, § 3-206, § 226, Or. L., is amended to read:

"Section 226. *Devise of Homesteads.* When any homestead shall have been disposed of by the last will and the testament of the owner thereof, the devisee shall take the same free of all judgments and claims against the testator of his homestead estate, except mortgages lawfully executed thereon and laborers' and mechanics' liens; provided, however, that such exemption shall not extend to any devisee other than a child, grandchild, widow or widower, and father or

mother of the testator; provided further, such homestead shall be subject to and charged with the expenses of his last sickness and of his funeral and the costs and charges of probate; and provided further, that nothing herein contained shall be construed as preventing or limiting the court or judge from setting apart for the widow, widower or minor children of the deceased the homestead as provided in section 1234, Oregon Laws."

By section 3 of the act, § 1234, Or. L., as amended by chapter 263, General Laws of Oregon, 1923, is amended to read:

"Section 1234. Upon the filing of the inventory, the court or judge thereof shall make an order setting apart for the widow, widower or minor children of the deceased, if any, all the property of the estate exempt from execution, according to exemption laws in effect as of date of death of deceased. The property thus set apart is the property of such widow or widower, to be used or expended by him or her in the maintenance of herself and minor children, if any; or if there be no widow or widower it is the property of the minor child; or if more than one child, then of the minor children in equal shares, to be used or expended in the nurture and education of such child or children by the guardian thereof, as the law directs."

■ By virtue of the foregoing act, it was the duty of the probate court, upon the filing of the inventory, to make an order setting apart for the widower the property of the estate exempt from execution, according to the exemption laws in effect as of date of death of deceased. However, at the time that the inventory was filed, no homestead had ever been established under the exemption law, and not until many months later did the widower conceive the notion of claiming a homestead in his deceased wife's property. This, however, is not a bar to his now claiming as exempt the property sought as a homestead.

■ This is not a proceeding to determine title to the house and lot involved herein. It is a proceeding to set off a portion of the decedent's estate as entitled to the privileges designated in the homestead exemption law. As appears from our statement, the petitioner is the devisee of a life interest in the real property of his deceased wife; and he, as her widower, is the only surviving person designated by the homestead exemption law as entitled to the exemption privilege. The court erred in requiring him to pay to the estate the sum of $2,000 in order to secure his exemption privilege. Claims against him arising out of his alleged negligence in caring for the estate should be determined in the proper forum. Moreover, a careful consideration of the record clearly shows that the value of the homestead property was not in excess of $3,000.

"The homestead right is a fee-simple interest, where an estate in fee supports it; but it is a life interest when supported by a life estate, and there is no inconsistency": Waples, Homestead and Exemption, p. 116.

It is hereby ordered that the petitioner herein shall take as his homestead the property described in his petition, subject to the expenses of the last sickness and the funeral of decedent, and the costs and charges of probate.

Neither party shall recover costs in this court.

BEAN, C. J., BELT and KELLY, JJ., concur.

## On Motion Modifying Opinion
### (298 P. 905)

This is a motion for modification of our opinion in the case of *In re Banfield's Estate,* filed March 17, 1931, wherein we awarded to petitioner, widower of Marie Banfield, deceased, as his homestead, lot 9, block 5, in Howe's addition to Portland, subject "to the expenses of the last sickness and the funeral of decedent, and the costs and charges of probate." The order entered therein, the petitioner asserts, "should be supplemented by adding thereto the words, 'if there is not sufficient other property in the estate to meet such expenses'."

BROWN, J. The Oregon Homestead Law has been the subject of much litigation and considerable legislation.

In 1893, the Legislative Assembly of this state enacted a law "To Exempt Homesteads from Attachment and Judicial Sale." See General Laws of Oregon, 1893, p. 93. Section 1 of that act provided for the exemption from judicial sale of the family homestead, and section 2 that such homestead must be the actual abode of the family, or some member thereof. Section 3 fixed a limitation of $1,500 in value. This law appears as sections 221–226, incl., Bellinger and Cotton's Code, and as sections 221–226, incl., L. O. L. By chapter 221, General Laws of Oregon, 1905, section 1 of the act was re-enacted. The act was revised by chapter 112, General Laws of Oregon, 1919, which is entitled, "An act to provide a homestead exemption law, and to repeal sections 221, 222, 223, 224, 225 and 226 of Lord's Oregon Laws, and all acts and parts of acts in conflict herewith." By chapter 263, General Laws of Oregon, 1923, the legislature amended and re-

enacted section 1234, Oregon Laws, relating to setting apart for the husband, widow or minor children of the deceased all property exempt from execution, and by the re-enactment of that section ratified and confirmed orders theretofore made by any court or judge thereof. Sections 225 and 226, Oregon Laws, and section 1234, Oregon Laws, as amended by chapter 263, General Laws of Oregon, 1923, relating to homesteads, were amended by chapter 345, General Laws of Oregon, 1927. In section 2 of this chapter, the same being section 226, Oregon Laws, there appears for the first time the proviso objected to in the instant case, i. e., that "such homestead shall be subject to and charged with the expenses of his last sickness and of his funeral and the costs and charges of probate." Under our homestead exemption statute, the exemption is limited to a specified area, and to the specified value of $3,000. If, as we did in our original opinion in this case, we are to construe this language of the statute literally, the homestead of petitioner is subject to the expenses of decedent's last sickness in the sum of $28.50, funeral expenses in the sum of $575.45, and costs and charges of probate in about $2,000—and this notwithstanding the estate is appraised at $37,881.34.

■ In our search of the authorities, we have found no case on all fours with the facts in the case at bar. But we have found much authority sustaining the proposition that this statute is a remedial statute and, to accomplish its beneficent purpose, should be broadly construed.

In Thompson on Homesteads and Exemptions, at section 1, the author has expressed his views on the homestead exemption law in the following language:

"The wise and benevolent policy which dictated the enactment of these laws has been the theme of con-

siderable forensic and judicial eloquence. The late Senator Benton, advocating in the United States senate the adoption of a general homestead policy, said: 'Tenantry is unfavorable to freedom. It lays the foundation for separate orders in society, annihilates the love of country, and weakens the spirit of independence. The tenant has, in fact, no country, no hearth, no domestic alter, no household god. The freeholder, on the contrary, is the natural supporter of a free government; and it should be the policy of republics to multiply their freeholders, as it is the policy of monarchies to multiply their tenants.' 'There is,' said Tarbell, J.,   *   *   *   'unquestionably no greater incentive to virtue, industry, and love of country than a permanent "home," around which gather the affections of the family, and to which the members fondly turn, however widely they may be dispersed.'   *   *   *

"And we find scattered through the cases which involve the construction of these laws, such expressions as these: '*   *   *   That the homestead exemption was founded upon principles of the soundest policy cannot be questioned. Its design was, not only to protect citizens and their families from the miseries and dangers of destitution, but also to cherish and support in the bosoms of individuals those feelings of sublime independence which are essential to the maintenance of free institutions. These are noble objects.' "

One of the fundamental rules of statutory construction, codified as Oregon Code 1930, § 9-214, reads:

"In the construction of a statute,   *   *   *   the office of the judge is simply to ascertain and declare what is, in terms or in substance, contained therein, not to insert what has been omitted, or to omit what has been inserted; and where there are several provisions or particulars, such construction is, if possible, to be adopted as will give effect to all."

It is likewise fundamental that various parts of a statute should be read so that all may, if possible, have their due and conjoint effect without repugnancy.

See *Spencer v. Portland,* 114 Or. 381 (235 P. 279). So, in the construction of a statute, the intention of the legislature is to be ascertained and effectuated, if possible: Oregon Code 1930, § 9-215. This rule has been applied over and over again by our court. *Kirk v. Farmers' Union Grain Agency,* 103 Or. 43 (202 P. 731); *State ex rel. v. Slusher,* 119 Or. 141 (248 P. 358). In other words, every statute must be construed with reference to the object intended to be accomplished by it. In this connection, we direct particular attention to the following excerpt from 1 Federal Statutes Annotated, 78:

"It has been laid down again and again that 'a thing which is within the intention of a statute is as much within the statute as if it were within the letter; and a thing which is within the letter of the statute is not within the statute, unless it be within the intention of the makers.' "

· See, also, the many authorities under note 2.

The same editor says, at page 55:

"When endeavoring to ascertain the intention of the legislature, courts are justified, under some circumstances, in giving weight to considerations of injustice or hardship that may. arise from a particular construction of a statute. The terms employed by the legislature are not to receive an interpretation which conflicts with acknowledged principles of justice if another sense, consonant with those principles, can be given to them."

In the case of *Mansfield v. Hill,* 56 Or. 400 (107 P. 471, 108 P. 1007), this court, speaking through Mr. Justice EAKIN, said, concerning the statute under consideration: "This law is only a statute of exemption." See also, *Marvin & Co. v. Piazza,* 129 Or. 128 (276 P. 680).

The object of the homestead exemption laws is well understood. This object is to assure to the unfortunate

debtor, and his equally unfortunate but more helpless family, the shelter and the influence of home; and, in its promotion, courts may well employ the most liberal and humane rules of interpretation. See 1 Freeman on Executions (2d Ed.), p. 746.

We do not sanction the enlargement or expansion of the meaning of words by the process of construction. However, from the very nature and purpose of the homestead exemption law itself, it would seem apparent that, by the enactment of 1927, it was not the intention of the Legislature to deprive any person of the protection and comfort of a homestead when such protection may be most needed. In the instant case it is the widower who claims the homestead as exempt. However, it were quite as possible to find, in the person claiming such homestead, a poor, unfortunate widow, perhaps with small children looking to her as their only means of support. If, irrespective of the value of the estate, the homestead of the petitioner herein is held to be subject to the expenses of the last sickness, funeral expenses and costs of probate, so, too, under the law, is every other homestead likewise liable for such claims. Such construction, in the opinion of the writer, would operate to defeat the very purpose of the homestead exemption law.

In view of the object and purpose of this law, and in view of the liberal interpretation placed upon it by eminent textwriters as hereinabove noted, we amend our previous order, in which we declared the homestead of the petitioner herein to be ''subject to the expenses of the last sickness and the funeral of decedent and the costs and charges of probate,'' by adding thereto the words ''if there is not sufficient other property in the estate to meet such expenses.''

BEAN, C. J., BELT and KELLY, JJ., concur.