STATE, EX·REL. FRANK W. ACTON, RELATOR, V. MABEL C. PENROD, COUNTY CLERK, RESPONDENT.

FILED NOVEMBER 1, 1918.   No. 20867.

1. **Elections:** CANDIDATES: MANDAMUS. Mandamus will not ·lie to compel a county clerk to place on the nonpartisan judiciary ballot the name of a· person as a candidate for the office of judge of the county court who is not one of the two candidates who received the highest number of. votes at the primary.

2. ———: STATUTES: CONSTRUCTION. Sections 2140, 2165, Rev. St. 1913, pertain to the subject of elections generally. The nonpartisan judiciary act with its amendments is a statute complete in itself and relates· to an independent subject. It is an elementary rule of construction that. special provisions in an act relating to particular subject-matter will prevail over general provisions in other statutes, so far as there is a conflict.

Original proceeding in mandamus by relator ·to compel respondent, as county clerk, to place the name of relator on the nonpartisan ballot as candidate for county judge. *Writ denied.*

*Willis E. Reed, Attorney General, L. W. Colby, Alfred Haslett* and *T. J. Doyle,* for relator.

*Rinaker & Kidd* and *Sackett & Brewster,* for respondent.

DEAN, J.

This is an original application, commenced in this court, for a writ of mandamus to compel respondent to place the name of. relator upon the nonpartisan judiciary ballot as a candidate for the office of judge· of the county court. The writ must be denied.

It appears that under the nonpartisan judiciary act, namely, sections 2209-2211, Rev. St. 1913, as amended by chapter 37, Laws 1917, three candidates filed for the office in question at the primary. After the primary it became the duty of respondent, under the law, to place

upon the nonpartisan ballot the names of the two can-
didates receiving the highest number of votes. F. W.
Messmore was one of the two successful candidates,
but before the primary he entered the military service
of the United States. About two months after the
primary, which was within the time provided by stat-
ute, he filed in the office of respondent his resignation.
Subsequently relator and another citizen, neither of
whom were candidates at the primary, filed their re-
spective petitions in the office of respondent with the
view of becoming candidates at the general election
for the office.

The petition in behalf of relator contained more
than 300 names, and requested "that his name be
placed on the official ballot as a nonpartisan candidate
by petition." He argues that, because his petition
was the first to be filed after the resignation of Mr.
Messmore, therefore section 2140, Rev. St. 1913, confers
upon him the right to have his name placed on the
ballot. Section 2140 provides that candidates nominated
under its provisions "shall be termed 'candidates by
petition,' and upon the ballot upon which their names
are printed shall be printed after such names the words
'by petition.'" It seems clear to us that section 2140,
in requiring the designation "candidates by petition"
to appear on the ballot, apparently conflicts with the
nonpartisan judiciary act, which provides that the
names of judicial candidates shall appear on the ballot
"without any political designation, circle or mark what-
ever." Laws, 1917, ch. 37, sec. 2210.

Section 2165, Rev. St. 1913, makes provision for fill-
ing a vacancy that occurs when the nominee of a politi-
cal party declines a nomination or when a vacancy
otherwise occurs. The nonpartisan act having no such
provision, and its language seeming to contemplate
that there may be but one candidate at the general
election, we are convinced that it was the legislative

intent that the candidates whose names appear on the nonpartisan ballot at the general election must be restricted to such candidates as have been nominated under that act at the primary. Of course, this does not prevent the voter from writing on the ballot at the general election the name of any person for whom he wants to vote.

Sections 2140 and 2165, Rev. St. 1913, pertain to the subject of elections generally. The nonpartisan judiciary act with its amendments is a statute complete in itself and relates to an independent subject. It is an elementary rule of construction that special provisions in an act relating to particular subject-matter will prevail over general provisions in other statutes, so far as there is a conflict. *Williams v. Williams,* 101 Neb. 369. A proper observance of the rule will not permit any other conclusion than that at which we have arrived.

We deem it proper to suggest that relator's argument should be addressed to the legislature rather than to the courts.

The writ is denied, and the action dismissed.

WRIT DENIED.

MORRISSEY, C. J., not sitting.

SEDGWICK, J., concurring.

When one of the two candidates that have been nominated for the office of county judge at the primary election under the nonpartisan judiciary act of 1913 dies or declines the nomination before the general election, whether the vacancy so created upon the ticket for the general election can be filled by petition is a question of difficulty. The primary election law of 1907 (Rev. St. 1913, secs. 2134-2208, Laws 1907, ch. 52) contains a general provision for nominating officers by petition (section 2140), specifying the officers so to be nominated, and among them the judge of the district court: "Certificates for the nomination of the

judge of the district court shall be filed with the county clerk of each county embraced in such judicial district.'' This section has not been changed by the legislature, althought it is referred to with approval in chapter 33, Laws 1915, which amends section 2138, Rev. St. 1913. Thus we have one important judicial officer who may be nominated by petition, although his name has not been submitted to the electors at the primary election.

The primary election law of 1907, as it is still in force, contains general provisions for the filling of the vacancies on the ticket at the general election, which before the enactment of the nonpartisan act applied to all offices for which candidates might be nominated at the primary election, and contained ample provisions for filling any vacancy on the ticket at the general election that might occur by death or declination of a candidate nominated at the primary or which might occur for any other reason. The policy of the law plainly is, and has been through all this legislation, to fill such vacancies and to require that the ballot at the general election shall present to the voters the names of at least two candidates for every office that is to be filled, and we might safely say that the failure to do so, if there is such failure, in the case of the nonpartisan ballot at the general election, was merely an oversight of the legislature, and that, if the possibility of the contingency that has arisen in this case had been suggested to the attention of the legislature, a provision would have been inserted remedying the apparent defect in the present law. It is unfortunate if such vacancies on the judicial ballot cannot be filled before the general election. If, however, the court should hold that the policy of the law to be derived from all of the legislation upon this subject requires that this vacancy should be filled by petition, a contingency might arise which requires

further legislation, and which the court would be unable to meet. If, as in this case, more than one candidate is presented by petition to fill this vacancy, there is no method provided, or even indicated, in the statute by which it could be determined which one of these candidates should have a place upon the general ticket, and the court cannot find from the general policy of the law any means of determining that question. And the nonpartisan judiciary act expressly provides: "Said county clerk or other official shall place on said separate ballot, in each office division, twice as many names as there are places to be filled at the said general election. Said names shall be the names of the persons who received the highest number of votes for the office for which they were candidates in the primary." Rev. St. 1913, sec. 2211 (Laws 1917, ch. 37). If this language is construed literally, it excludes the possibility of filling a vacancy under such circumstances. I suppose we are compelled to adopt the conclusion reached in the majority opinion.