STATE, EX REL. ANDREW R. OLESON, RELATOR, V. WALTER L. MINOR, COUNTY CLERK, RESPONDENT.

FILED NOVEMBER 10, 1920. NO. 21764.

1. Elections: VACANCY IN SUPREME COURT: MANDAMUS. Mandamus will not lie to compel a ministerial officer to place upon the official nonpartisan judiciary ballot blank spaces, appropriately placed in the proper office division, so that the electors of the state may at the general November election write in names, and vote for persons whose names are so written in, to fill a vacancy in the supreme court, when such vacancy occurred at a period so recently before the primary election that there was not sufficient time to nominate candidates for such office. Rev. St. 1913, secs. 2209, 2211, as amended, Laws 1917, ch. 37, as amended, Laws 1919, chs. 88, 89. *State v. Penrod*, 102 Neb. 734.

2. ——: ——. When a vacancy occurs in the supreme court and two persons are thereafter regularly nominated at the regular election under the nonpartisan judiciary law as candidates for "judge of supreme court," and subsequently another vacancy occurs in such court, but too late to have the names of persons filed for nomination at the primary as candidates for such second vacancy, the two persons so nominated are candidates for the first vacancy only.

3. Constitutional Law: VACANCY IN SUPREME COURT. Section 21, art. VI of the Constitution, reads: "In case the office of any judge of the supreme court, or of any district court, shall become vacant before the expiration of the regular term for which he was elected, the vacancy shall be filled by appointment by the governor, until a successor shall be elected and qualified, and such a successor shall be elected for the unexpired term at the first general election that occurs more than thirty days after the vacancy shall have happened." *Held*, that the foregoing section is not self-executing,

State, ex rel. Oleson, v. Minor.

but must be construed together with section 20, art. III of the Constitution, which reads: "All offices created by this Constitution shall become vacant by the death of the incumbent, by removal from the state, resignation, conviction of a felony, impeachment, or becoming of unsound mind. And the legislature shall provide by general law for the filling of such vacancy, when no provision is made for that purpose in this Constitution."

4. Judges: VACANCY IN SUPREME COURT. When a vacancy is created in the supreme court by death, resignation, or otherwise, so recently before the primary election that sufficient time does not remain to nominate candidates to be voted for at the general election to fill the vacancy, the appointee named by the governor to fill the vacancy is entitled to hold the office until a successor is regularly nominated and elected pursuant to the provisions of the nonpartisan judiciary law.

5. Elections: NOMINATION OF JUDGES. The legislature having provided that candidates for the office of judge of the supreme court shall have their petitions for nomination filed at least 30 days prior to the primary election, and having made no provision for the nomination of candidates for that office after the expiration of such 30-day period, the court is without authority to supply that which the legislature did not see fit to supply. Rev. St. 1913, sec. 2209, as amended, Laws 1919, ch. 88.

Original proceeding in mandamus by relator to compel respondent, as county clerk, to provide in the nonpartisan ballot for the election of a judge of the supreme court to fill a vacancy. *Writ denied.*

*E. B. Perry* and *W. T. Thompson*, for relator.

*T. J. Doyle, C. C. Flansburg, C. E. Matson* and *H. R. Ankeny*, contra.

DEAN, J.

Relator made application to this court for a writ of mandamus to require respondent to place on the official nonpartisan judicial ballot blank spaces, appropriately placed in the proper office division, so that the electors of the state may, at the general election to be holden November 2, 1920, write in names and vote for persons to fill the vacancy in the supreme court caused by the death, on April 18, 1920, of the late Judge Albert J. Cornish.

In 1919 a vacancy was created by the death of Judge Samuel H. Sedgwick who departed this life December 25, 1919, and for reasons hereinafter appearing the vacancy so created must be noticed in deciding the present case. Both Judge Sedgwick and Judge Cornish were elected to the supreme court in November, 1916, for the six-year term beginning January, 1917, and ending January, 1923. On January 8, 1920, to fill the vacancy caused by Judge Sedgwick's death, until it could be filled by election, Honorable George A. Day was appointed by the governor. Subsequently, but not less than 30 days before the April primary, and pursuant to the provisions of the nonpartisan judiciary law, nominating petitions were filed in behalf of Honorable George A. Day and Honorable William C. Dorsey as candidates for "judge of supreme court." When their petitions were circulated and filed the vacancy caused by the death of Judge Sedgwick was the only vacancy to be filled. Both candidates were nominated pursuant to the respective petitions filed in their behalf under the nonpartisan judiciary law governing nominations, and they are now candidates for such vacancy. Rev. St. 1913, secs. 2209, 2211, as amended, Laws 1917, ch. 37, as amended, Laws 1919, chs. 88, 89. *State v. Penrod,* 102 Neb. 734.

On April 21, 1920, Honorable Leonard A. Flansburg was appointed by the governor to fill the vacancy caused by the death of Judge Cornish. Relator contends that both vacancies, notwithstanding that Judge Cornish died only two days before the April, 1920, primary, should be filled by the electors of the state at the general election in November by writing in the names of persons and voting for them. In support of his argument he cites section 21, art. VI of the Constitution, which he says is self-executing. It provides: "In case the office of any judge of the supreme court, or of any district court, shall become vacant before the expiration of the regular term for which he was elected, the vacancy shall be filled by appointment by the governor, until a successor shall be

elected and qualified, and such a successor shall be elected for the unexpired term at the first general election that occurs more than thirty days after the vacancy shall have happened."

We do not agree with relator's argument that the foregoing section of the Constitution is self-executing. No provision is made in that section for the nomination or the naming of candidates to be voted for at the general election to the end that the general election feature to which the section refers may be carried into effect. It follows that it must be considered in connection with section 20, art. III of the Constitution, which expressly provides: "All offices created by this Constitution shall become vacant by the death of the incumbent, by removal from the state, resignation, conviction of a felony, impeachment, or becoming of unsound mind. And the legislature shall provide by general law for the filling of such vacancy, when no provision is made for that purpose in this Constitution."

The fact that the lawmaking body has made no provision for the nomination of candidates to be voted for at the general election to supply a vacancy that has occurred too late to make a nomination under the provisions of the nonpartisan judiciary law does not impose the duty upon the court of supplying that which the legislature did not supply to make the constitutional provision effective.

"The right to vote is a political right or privilege to be given or withheld at the exercise of the lawmaking power of the sovereignty. It is not a natural right of the citizen, but a franchise dependent upon law, by which it must be conferred to permit its exercise. It can emanate only from the people, either in their sovereign statement of the organic law or through legislative enactment which they have authorized." 20 C. J. 60, sec. 13.

In considering the facts before us it is to be noted that the legislature did not provide in the amendment to the nonpartisan judiciary law that judicial ballots should be prepared for the general election with blank spaces so

that voters might write in names and vote for persons who were not first nominated at the primary.

It is true that, under the general election law, it is provided that blank spaces may be placed on the ballot following the names of persons who have become candidates in the manner provided by the statute. Rev. St. 1913, sec. 1995. But the act last cited is general in its application and cannot be held to supersede a special act, such as the nonpartisan judiciary act, that relates to an independent subject and is complete in itself. In *State v. Penrod*, 102 Neb. 734, we held: "Mandamus will not lie to compel a county clerk to place on the nonpartisan judiciary ballot the name of a person as a candidate for the office of judge of the county court who is not one of the two candidates who received the highest number of votes at the primary." Substantially the same principle is involved here, and we adhere to the rule there announced as being applicable to the facts before us in the present case. In the *Penrod* case it is also said: "We deem it proper to suggest that relator's argument should be addressed to the legislature rather than to the courts." The following legislature, in 1919, so amended the law as to provide for the nomination of a candidate for county judge when less than two persons filed a petition to have their names placed on the primary election ballot, but it made no provision for the nomination of a candidate for supreme judge under like circumstances. Laws 1919, ch. 89. It has been said often enough that in the division of the powers of government the judiciary shall not usurp the function of the legislature. To do so would be judicial legislation, an insidious judicial offense, and one which may in time, if indulged, imperil the perpetuity of our institutions.

In *State v. Drexel*, 74 Neb. 776, 791, we said: "The right to freely choose candidates for public offices is as valuable as the right to vote for them after they are chosen. Both these rights are safeguarded by the constitutional guaranty of freedom in the exercise of the elective franchise."

State, ex rel. Oleson, v. Minor.

In *State v. Junkin*, 85 Neb. 1, 6, we said: "Electors who desire to vote for a particular candidate for judge of the supreme court at the November election should be allowed to take part in nominating him or in whatever preliminary step the law requires as a condition of allowing his name to be printed on the official ballot."

In *State v. Dubuclet*, 28 La. 698, 704, it is held: "In civil governments, rights are enforced by rules and methods having the authority of law, and they can be legally enforced in no other way. The high behests of the organic law are not always self-enforcing; the manner in which its commands are to be obeyed is often left to be provided by the legislative branch of the government. To this branch of the state government the organic law delegates the power to provide rules and principles by which its provisions are to be made practically useful, and especially so when the organic law is silent on the subject. Without such prescribed rules established by law, courts have no guide by which to proceed in their investigation of litigated questions." In the body of the opinion the court said: "If the lawmaker has omitted to enact the law under which proceedings in such cases are to be conducted, it is a *casus omissus* which the courts cannot supply." To the same effect is the text in 12 C. J. 730, sec. 106.

In *State v. Gardner*, 3 S. Dak. 553, it is said: "There is no inherent reserved power in the people to hold an election to fill a vacancy in an elective office. Such election can only be held when and as authorized by law. In section 37, art. V of the Constitution, which provides that 'vacancies in the elective offices provided for in this article (judiciary) shall be filled by appointment until the next general election,' etc., the expression 'next general election' means the next election at which it is provided by law that the officer may be elected whose office has become vacant."

The recent constitutional convention of our state composed of 100 representative citizens selected from the body of the people were in almost continuous session from December 2, 1919, until March 25, 1920. Among other pro-

posed amendments submitted to the people was this: "In case the office of any judge of the supreme court or of any district court shall become vacant before the expiration of the regular term for which he was elected, the vacancy shall be filled by appointment by the governor, for the unexpired term, and until a successor shall be elected and qualified." Constitution, as amended, art. V, sec. 21.

Upon submission to the people September 20, the amendment so proposed was adopted by a vote approximating almost five to one of those voting on the question. The amendment so adopted is not, of course, controlling in the present case. It does not become effective until January, 1921, but it is not without significance that the people are committed to the policy that is embodied in the amendment, namely, that the person appointed to fill a vacancy in the office of the supreme court or of any district court shall hold the office for the unexpired term for which the regularly elected incumbent was elected.

The legislature having provided that candidates for the office of judge of the supreme court shall have their petitions filed at least 30 days prior to the primary election, and having made no provision for the nomination of candidates for that office after the expiration of such 30-day period, the court is without authority to supply that which the legislature did not see fit to supply. Rev. St. 1913, sec. 2209, as amended, Laws 1919, ch. 88.

Our construction of section 21, art. VI of the Constitution, seems to be supported by the courts of the states having similar constitutional provisions where a like question has been raised. *State v. Portland Railway, Light & Power Co.,* 56 Or. 32; *Blake v. Board of Commissioners,* 5 Idaho, 163; *Arizona E. R. Co. v. Matthews,* 20 Ariz. 282; *Kelsey v. District Court,* 22 Wyo. 297; *Cauthron v. Murphy,* 61 Tex. Civ. App. 462. From what has been said herein, and in view of the authorities, it seems clear to us that the relief prayed for by relator must be denied.

WRIT DENIED.

DAY and FLANSBURG, JJ., not sitting.