Demurrer to alternative writ of *mandamus* sustained October 6, 1925.

## STATE EX REL. L. L. SWAN *v.* SAM A. KOZER, SECRETARY OF STATE.

### (239 Pac. 805.)

States—Secretary of State can be Required to Act Only in Compliance With an Existing Law.

1. Secretary of State can be required to act only in compliance with an existing law.

Elections—Election to be Valid must be in Pursuance of Constitutional or Statutory Authority and Regulation.

2. There can be no valid election, except in pursuance of constitutional or statutory authority and regulation.

Statutes—House Bill Held Bill for a Law, and not Mere Direction or Order to Secretary of State to Call an Election.

3. House bill, authorizing special election to vote on measures enacted by Thirty-third Legislative Assembly, passed pursuant to

Constitution, Article V, Section 15b, and complying with Article IV, Section 20, as to subject matter, with Article IV, Section 1, as to style, and designed to comply with Article IX, Section 4, as to appropriations, *held* a bill for a law as against relator's contention that measure was but an order for a special election, provided for by Article IV, Section 1, of Oregon Constitution.

**Statutes—In Order to have Valid Election on Referred Measures, Valid Law Providing Therefor is Necessary.**

4. Neither Constitution nor statute authorizes Secretary of State to fix the time of a special election for the purpose of submitting referred measures to the people, and hence a valid election on such measures could not be had without a valid law providing therefor.

Original proceeding in *mandamus.*

In Banc.

This is an original proceeding in *mandamus,* growing out of the refusal of Sam A. Kozer, as Secretary of State of the State of Oregon, to carry out the provisions of a bill which had been vetoed by the Governor.    DEMURRER TO WRIT SUSTAINED.

For petitioner, *Mr. W. E. Keyes* and *Mr. John H. McNary.*

For defendant, *Mr. I. H. Van Winkle,* Attorney General, and *Mr. Willis S. Moore,* Assistant Attorney General.

BROWN, J.—1. The Secretary of State can be required to act only in compliance with an existing law.

House Bill No. 517 was a bill for an act authorizing a special election for the purpose of submitting to the people any measures which might be referred to them. It passed both houses of the legislative assembly and was thereafter transmitted to the Governor, who indorsed thereon his disapproval and filed the same with the Secretary of State, together with the reasons for his veto. The Secretary assumed the

position that the proposed statute was ineffective be-
cause of its disapproval by the Governor, hence he re-
fused to comply with its provisions. This court issued
an alternative writ of *mandamus*, directing the Secre-
tary of State to perform the duties set forth in the
proposed bill, or to show cause for his failure so to
do. The defendant filed a demurrer to the writ.

The relator challenges the right of the Governor to
veto the proposed measure. He says, in effect, that
the measure is but an order for a special election
provided by Section 1, Article IV, Oregon Constitu-
tion, for the purpose of submitting to the people
measures referred to them. This calls for an exami-
nation of the bill, to ascertain whether it is, in truth,
a bill for a law, or a mere direction to the Secretary
of State to call an election.

2. In the first instance, let us consider the neces-
sity of a law for the purpose of holding an election.
It is an elementary principle that there can be no
valid election except in pursuance of constitutional
or statutory authority and regulation. That propo-
sition is well sustained by our own authorities. In
the case of *State ex rel. Everding* v. *Simon*, 20 Or.
365, 371 (26 Pac. 170), this court, speaking through
Mr. Justice BEAN, said:

"An election, in order to be valid, must be held in
pursuance of the provisions of some law authorizing
it, in force at the time. There is no inherent re-
served power in the people to hold an election
(*People* v. *Bull*, 46 N. Y. 57; *State* v. *Jenkins*, 43
Mo. 261; *People ex rel.* v. *Johnston*, 6 Cal. 673; *Ma-
thews* v. *Board*, 34 Kan. 606 (9 Pac. 765); *State ex
rel.* v. *Sims*, 18 S. C. 460)."

That excerpt is quoted in *Andrews* v. *Neil*, 61
Or. 471 (120 Pac. 383, 123 Pac. 32). The principle

is again followed in an opinion by this court prepared by Mr. Justice BURNETT in *Equi* v. *Olcott,* 66 Or. 213 (133 Pac. 775). Again, in *Barber* v. *Johnson,* 86 Or. 390 (167 Pac. 800, 1183), Mr. Justice Mc-CAMANT declared "that an election held without authority of law is ineffectual for any purpose," citing in support thereof *Andrews* v. *Neil, supra,* and *Equi* v. *Olcott, supra.* See, also, *Carriker* v. *Lake County,* 89 Or. 240 (171 Pac. 407); Paine on Elections, § 285; 9 R. C. L., Elections, § 32; 20 C. J., p. 95, § 76.

"An election held without affirmative constitutional or statutory authority will be invalid notwithstanding a unanimous vote may be cast in favor of the particular question submitted. * *

"There is no inherent reserved power in the people to hold elections. They are therefore of no effect, unless held by virtue of some law in force at the time they are held. * * A mere naked authority to hold an election is without effect if there is no affirmative legislation providing the necessary machinery for holding the same." 10 Am. & Eng. Ency. of Law (2 ed.), pp. 562, 563.

3. The Thirty-third Legislative Assembly of the State of Oregon, for the purpose of providing for a valid special general election throughout the state, passed the following measure:

"A BILL
for
"AN ACT authorizing a special election to vote on all measures enacted by the Thirty-third Legislative Assembly of the State of Oregon on which a referendum may be invoked and which levy any tax or license fee upon the transaction of any business, and on measures which by their terms provide that they shall be submitted to the people at the next general or special election, making an appropriation for the purpose of de-

fraying the expenses of such election, and declaring an emergency.

"BE IT ENACTED BY THE PEOPLE OF THE STATE OF OREGON:

"Section 1.    There shall be held a special election in the several voting precincts of this state on the second Tuesday in September, 1925. All measures passed by the Thirty-Third Legislative Assembly of the State of Oregon, which levy any tax or license fee upon the transaction of any business upon which the referendum may be invoked by petition of the people, shall be submitted to the people for their approval or rejection at such special election; provided, however, that if the referendum shall not be invoked upon any such measure, then the special election authorized by this act shall not be held.    If the referendum be invoked on said measures, or any of said measures, which levy any tax or license fee upon the transaction of any business, then, in that event, such other measures as were submitted by the Thirty-Third Legislative Assembly of the State of Oregon to be voted upon at the next general or special election, shall be submitted to the people for their approval or rejection at said special election except Senate Bill 235 of the Thirty-Third Legislative Assembly. The polls shall open and close at the same time as now provided by law for general elections in this state and the vote cast on such laws or measures shall be counted, canvassed, returned and declared in the same manner as provided by law for all laws or measures submitted to the people at general elections.

"Section 2.    On or before July 1st, 1925, any person or association of persons may file with the secretary of state any argument opposing or favoring any or all of said measures to be voted on by the people at such special election, on the same terms and conditions as are provided therefor by law for the filing of such arguments or statements on any measures referred to the people at a regular biennial election.

"Section 3.  Immediately after the time shall have expired for filing arguments as is provided in section 2 hereof, the secretary of state shall cause to be printed in pamphlet form in the manner now provided by law, a true copy of the title and text of each measure to be submitted at such election, together with any such arguments so filed, and shall at least eight days before the date of said election mail to each registered voter of the state a copy of such pamphlet.

"Section 4.  Not later than July 6th, 1925, the secretary of state shall mail to the county clerk of each county, copies of such measures upon which the referendum may be invoked and which are to be referred to the people by the terms of this law, and the mailing of such copy of such measure or measures shall constitute notice to each such clerk of the provisions hereof, and shall be in lieu of any other notice required by law.  Said county clerk shall forthwith proceed to do all of the things required by law in order to provide for the holding of the election herein prescribed.  Notice of such election shall be given according to the law governing special elections.

"Section 5.  Not later than July 15th, 1925, the secretary of state shall furnish to the county clerks of the several counties the certificate containing the information, direction and material affecting measures and amendments to be submitted at said election required by section 4101, Oregon Laws.

"Section 6.  In order to defray all expense incident to carrying the provisions of this act into effect, there is hereby appropriated out of the moneys in the general fund in the state treasury not otherwise appropriated, the sum of fifteen thousand dollars ($15,000), or so much thereof as may be necessary, and the secretary of state is hereby authorized and directed to audit and pay all duly certified claims therefor in the same manner as other claims against the state are audited and paid.  .

"Section 7.   It is hereby adjudged and declared that existing conditions are such that this act is necessary for the immediate preservation of the public peace, health and safety; and, owing to the urgent necessity of maintaining the public credit, an emergency is hereby declared to exist, and this act shall take effect and be in full force and effect from and after its approval by the governor."

This bill was submitted to the Governor, who vetoed the same and filed it, with his objections thereto, in the office of the Secretary of State.

We have set out the proposed law in full for the reason that the measure itself affords the best evidence that, in passing the same, the legislative assembly intended to enact a law, and not to pass a mere resolution.   It is unnecessary to go abroad for judicial precedents upon which to determine the issue involved.   The bill itself and the provisions of our own Constitution determine this controversy. If we bear in mind these provisions, together with the principle that a valid election can be had only by virtue of some constitutional provision or legal enactment, either expressly or impliedly authorizing such election, we shall encounter no difficulty in deciding this cause.

"Every bill which shall have passed the legislative assembly shall, before it becomes a law, be presented to the governor; if he approve, he shall sign it; but if not, he shall return it, with his objections, to that house in which it shall have originated, which house shall enter the objection at large upon the journal and proceed to reconsider it. * * If any bill shall not be returned by the governor within five days (Sundays excepted) after it shall have been presented to him, it shall be a law without his signature, unless the general adjournment shall prevent its return, in which case it shall be a law, unless the governor

within five days next after the adjournment (Sundays excepted) shall file such bill, with his objections thereto, in the office of the secretary of state, who shall lay the same before the legislative assembly at its next session in like manner as if it had been returned by the governor." Or. Const., Art. V, § 15b.

" * * The veto power of the governor shall not extend to measures referred to the people. All elections on measures referred to the people of the state shall be had at the biennial regular general elections, except when the legislative assembly shall order a special election * * ." Or. Const., Art. IV, § 1.

The measure involved in this litigation was never referred to the people to be enacted or rejected at the polls by them. In pursuance of the provisions of Section 15b, Article V, this bill for an act, after having been adopted by each house of the legislative assembly, was presented to the Governor, to be signed by him if he should approve the measure. An examination of the bill itself shows that it was a proposed law. It was treated by the legislative assembly as a proposed law. Likewise, the Governor deemed it to be a bill for an act, and he but exercised his constitutional prerogative when he vetoed it. It has all the component parts of a proposed statute. Every section contained therein was contemplated by the legislative assembly to be a section of a proposed statute. The measure complies with Section 20, Article IV, providing that "every act shall embrace but one subject, and matters properly connected therewith, which subject shall be expressed in the title." It complies with the provisions of Section 1, Article IV, reading: "The style of all bills shall be: 'Be it enacted by the people of the state of Oregon.' "

"Written laws, in all times and in all countries, whether the edicts of absolute monarchs, decrees of

king and council, or the enactments of representative bodies, have almost invariably, in some form, expressed on their face the authority by which they were promulgated or enacted. The almost unbroken custom of centuries has been to preface laws with a statement in some form declaring the enacting authority." 25 R. C. L., pp. 775, 776.

The measure likewise complies with the requirements of Section 1, Article IV, in relation to the style of its emergency clause. Section 1 of the bill was intended by the legislature to provide for a special election in the several voting precincts of the state, in September, 1925. Section 2 provides for the filing with the Secretary of State of arguments for or against the measures referred. Section 3 was plainly intended as a section of law authorizing the Secretary of State to print in pamphlet form a copy of the title and text of each measure to be voted upon in September, together with arguments filed, and to mail a copy of such pamphlet to each registered voter of the state. Section 6 provides for defraying the expenses incident to carrying out the provisions of the proposed measure, and appropriates the sum of $15,000 therefor. This section was designed to comply with the following section of the Constitution:

"No money shall be drawn from the treasury but in pursuance of appropriations made by law." Section 4, Art. IX, Or. Const.

House Bill No. 517 was a measure, not a resolution, that had passed the legislative assembly, and all that was lacking to make it a valid law was the Governor's signature or his detention of the bill beyond the limitation allowed by the Constitution.

4. It is said, in effect, that elections are held under the Recall Amendment to the Constitution, without

special legislation providing therefor. Now let us examine into the procedure under that constitutional provision: The recall petition shall be filed with the officer with whom a petition for nomination to such office shall have been filed, and the same officer shall order the special election, whenever a sufficient petition is filed. The requisite number of signers of the petition shall be 25 per cent of the number of electors who shall have voted in the district. Further, if the official shall not resign within five days after petition for his recall is filed, a special election shall be ordered to be held in his district within twenty days, to determine whether such officer shall be recalled.

It will be observed that the constitutional amendment providing for a recall fixes the time for election and likewise empowers the officer with whom the petition is filed to order the recall. On the other hand, neither the Constitution nor the statute authorizes the Secretary of State to fix the time of a special election for the purpose of submitting referred measures to the people. Another circumstance, persuasive, though not controlling, is that the legislative assembly has interpreted the constitutional provision designated Section 1, Article IV, relating to the initiative and referendum, as necessitating the enactment of a law authorizing a special election when an election is to be had upon referred measures at any time other than the time when the biennial regular general election is held. Laws such as the one in question, "authorizing and providing for a special election to vote on referred measures," have been enacted by nine separate legislative assemblies. That body never deemed that a valid election could be had without a valid law providing for an election.

In brief, the Thirty-third Legislative Assembly of the State of Oregon passed House Bill No. 517, which act provided for a special election, to be held on the second Tuesday in September, 1925, for the purpose of voting on measures referred to the people. The measure was vetoed by the Governor. By disapproving that measure, the chief executive exercised a power vested in him by the Constitution.

We have found no law designating, or empowering the Secretary of State to designate, the second Tuesday in September, 1925, as a day for voting upon referred measures. Hence, we conclude that there is no law of this state authorizing an election on that date.

The demurrer to the writ will be sustained.

DEMURRER SUSTAINED.