Argued June 6; peremptory writ allowed June 13, 1933

STATE ex rel. BYLANDER v. HOSS

(22 P. (2d) 883)

*John J. Beckman,* of Portland (Latourette & Latourette, of Portland, on the brief), for plaintiff.

*I. H. Van Winkle,* Attorney General, for defendant.

BELT, J. This is an original proceeding in mandamus to compel the Secretary of State to submit to the voters of Oregon for their approval or rejection at the special election on July 21, 1933, an initiative measure to repeal the prohibition amendment of the Constitution of Oregon, being sections 36 and 36a of article I thereof.

The demurrer to the alternative writ presents the question as to whether chapter 440, Oregon Laws, 1933, authorizes the submission of such initiative measure at this special election. The petition filed with the Secretary of State requests that the measure be submitted to the legal voters of the state "for their approval or rejection at Special Election to be held on Friday, the 21st day of July, A. D. 1933, or at the general election to be held on the first Tuesday after the first Monday of November, A. D. 1934".

It is conceded that an election in order to be valid must be authorized by law and that there is no inherent power of the people to hold an election: *State ex rel. Everding v. Simon,* 20 Or. 365 (26 P. 170); *State ex rel. Swan v. Kozer,* 115 Or. 638 (239 P. 805). Indeed, section 1 of article IV of the Constitution of Oregon provides, among other things, that:

"\* \* \* All elections on measures referred to the people of the state shall be had at the biennial regular general elections, except when the legislative assembly shall order a special election".

We must find statutory authorization therefor if the proposed initiative measure is to be submitted at the special election.

The title to the act in question reads as follows:

"Authorizing and providing for a special election to vote on measures enacted by the regular session of the thirty-seventh legislative assembly of the state of Oregon and submitted to the people; also on amendments to the constitution of the state of Oregon proposed by said legislative assembly, and submitted to the people; also to elect delegates to a constitutional convention and to vote upon a certain proposition directing such delegates; also to vote upon any measures enacted by the regular session of the thirty-seventh legislative assembly of the state of Oregon against which the referendum may be invoked, or which may be initiated by the people; appropriating money to defray the expenses of such special election, and declaring an emergency".

Section 1 provides:

"A special election shall be held in the several voting precincts throughout the state of Oregon on Friday, the twenty-first day of July, 1933. At such election all proposed amendments to the constitution of the state of Oregon submitted by the thirty-seventh legislative assembly, regular session, and all measures or enactments passed by said assembly, and which are or may be referred to the people shall be submitted to the people for approval or rejection. The said election shall be held during the same hours on said day and in all respects in the same manner as are other elections as provided by law relating to regular general elections, and the votes cast on such amendments or measures shall be counted, canvassed, returned and declared in the same manner as provided by law for measures voted upon at regular general elections".

■ The precise question is: Did the legislature in the above act express an intention to submit initiative measures to the legal voters of the state for their approval or rejection at the special election on July 21, 1933? If this court were permitted to look solely to the title of the act to determine the question of legislative intent there would be no doubt about the matter, since initiative measures are specifically enumerated therein. It is recognized, however, that authorization for the submission of initiative measures must be found in the body of the act. It is conceded that, even · though the title indicates an intention of the legislature to include initiative measures in the legislation to be submitted to the voters at this special election, still the legislature must actually carry out such intention by expressing the same in the body of the act.

■ A consideration of the title is important, however, in construing words of doubtful or uncertain import as used in the context of the act. Particularly is this true in jurisdictions such as Oregon, having a constitutional provision requiring the subject matter of an act to be expressed in the title thereof: 25 R. C. L. 1033. As stated in *State v. Robinson*, 32 Or. 43 (48 P. 357), and cited with approval in *Turnidge v. Thompson*, 89 Or. 637 (175 P. 281):

"By the constitution of this state, every act is required to have a title expressing the subject matter. The title, therefore, is necessarily a part of the act, and renders very important aid, if need be, in its construction, or in determining the legislative intent * * *".

Since the title is a part of the act there is no logical reason to exclude it in determining the intention of the legislature. As stated in *Malloy v. Marshall-Wells*

*Hardware Co.,* on rehearing, 90 Or. 303 (173 P. 267, 175 P. 659, 176 P. 589):

"The title of the act is a part of the statute and can be looked to for the purpose of ascertaining the meaning of the statute".

In *Miller v. School District,* 106 Or. 108 (211 P. 174), it was said:

"For the purpose of construction, the title of a statute may be considered".

The case last cited and that of *Turnidge v. Thompson,* supra, are listed with numerous authorities from other jurisdictions in an exhaustive note in 37 A. L. R. 951, supporting the proposition that the title is always a proper element for consideration in the construction of a statute. Every statute should be viewed from its four corners. Indeed, as stated by Chief Justice Marshall in *United States v. Fisher,* 6 U. S. 358 (2 L. Ed. 304):

"Where the mind labors to discover the design of the legislature, it seizes everything from which aid can be derived; and in such case, the title claims a degree of notice, and will have its due share of consideration".

. One of the cardinal rules of statutory construction is that significance and effect must, if possible, be given to every section, clause, word, or part of an act.

What did the legislature mean by the following language in section 1 of the act:

"At such election all proposed amendments to the constitution of the state of Oregon submitted by the thirty-seventh legislative assembly, regular session, and all measures or enactments passed by said assembly, and which are or may be referred to the people shall be submitted to the people for approval or rejection."?

Did the legislature intend to grant the voters the right to pass judgment only on constitutional amendments proposed by it and on laws which it enacted? Are we to say that the legislature intended to deny the people the right to submit at this special election a measure which they have seen fit to initiate? It is urged on behalf of the defendant that "measures or enactments" were used synonymously by the legislature. The words "all measures" in their ordinary acceptation and meaning are broad and comprehensive enough to include not only "enactments" but initiative and referendum measures. In construing article IV, section 1 of the Constitution of Oregon, this court, in *Herbring v. Brown*, 92 Or. 176 (180 P. 328), held that "measures" as used therein included measures initiated by the people and measures referred to the people. While in the instant case it was not so used, "all measures" could be used to include resolutions, memorials, and even city ordinances. It is well established that "all measures" passed by the legislature are not subject to the referendum. Thus it may reasonably be contended that the legislature, in enacting the statute under consideration, used the words, "all measures" to include measures initiated by the people.

■ At any rate, it may well be said that section 1 of the act is reasonably susceptible of different interpretations. However, when the section is read in the light of the plain and explicit wording of the title to the act, we think it must have been the intention of the legislature to submit initiative measures to the voters for their approval or rejection at the special election therein provided. If we adopt any other construction, it must be said that the legislature, through inadvertence and mistake, failed to carry out the intention as clearly indicated in the title.

■ Election laws should be liberally construed to the end that the people may have the opportunity of expressing opinion concerning matters of vital interest to their welfare. Expression, not suppression, tends towards good government. The great constitutional privilege of a citizen to exercise his sovereign right to vote should not be taken away by narrow or technical construction. If the statute is of doubtful construction, we think the doubt should be resolved in favor of free expression of opinion: *Othus v. Kozer*, 119 Or. 101 (248 P. 146).

It follows that the demurrer to the alternative writ is overruled and a peremptory writ will issue directing the Secretary of State to proceed not inconsistent with this opinion.

RAND, C. J., did not participate in this decision.

BEAN, ROSSMAN, and KELLY, JJ., concur.

BAILEY, J., concurs in the result.

———

CAMPBELL, J. (dissenting). I cannot concur with my associates in the opinion that the words used in the body of the act are ambiguous or of such doubtful meaning so as to make it necessary to appeal to the title to determine what it meant.

The refusal to permit the sponsors of the said amendment to the constitution to have the matter voted upon at the special election in 1933 does not deprive the people of the right to express their opinion thereon at the polls. It simply postpones the vote until 1934. The relator and those signing the petition presented to the secretary of state must have had grave doubts as to their right to have the matter submitted at the

special election, as in the petition they asked that it be submitted to the voters, either at the special election of July, 1933, or at the regular general biennial election of November, 1934.

The controversy arises over the meaning that should be given to section 1, and especially to the word "measure" in the following sentence: " * * * and all measures or enactments passed by said assembly, and which are or may be referred to the people * * *".

It is the contention of relator that the word "measures" is broader and means something more than "enactments". In respect to legislative matters, "measures" is defined by Funk & Wagnalls New Standard Dictionary as "a specific act or course of procedure desired as a means to an end; an expedient; a legislative bill; * * *".

"Counsel for petitioner suggests that the term 'measures' used in the amendment, enlarges the scope of the powers reserved beyond express reservation, but this is evidently not the purpose with which that term is employed. As before observed, there are two powers reserved. (1) The power to propose laws and amendments to the constitution, and to enact or reject them at the polls, and (2) the power to enact or reject at the polls any act of the Legislative Assembly. The subject matter upon which these powers may be exercised namely: initiative laws, constitutional amendments, and acts of the legislature referred to the people, are thereafter referred to collectively as 'measures', merely as a matter of convenience and to avoid frequent enumeration of the powers reserved, and not with the intent to include other and different powers within the scope of the amendment. Had it been the intent of the framers of the referendum amendment to go beyond these express reservations, it would have been easy and natural for them to have said so". Herbring v. Brown, 92 Or. 176 (180 P. 328).

The rule is unquestioned that a statute should be interpreted according to the legislative intent, as gathered from the language used in expressing said intent in connection with the surrounding circumstances, so as to give full effect to the words so used in their ordinarily accepted meaning, unless it clearly appears that the legislative body intended the words to be understood in a different sense. *State ex rel. Everding v. Simon,* 20 Or. 365 (26 P. 170); *Union Fisherman's Co. v. Shoemaker,* 98 Or. 659 (193 P. 476, 194 P. 854); *U. S. F. & G. Co. v. Bramwell,* 108 Or. 268 (217 P. 332, 32 A. L. R. 829); *Banfield v. Shulderman,* 137 Or. 167 (296 P. 1066, 298 P. 905).

The Constitution of Oregon, article IV, § 1, provides:

"* * * that all elections on measures referred to the people of the state shall be held at the regular general biennial elections, except when the legislative assembly shall order a special election * * *. Petitions and orders for the initiative and for the referendum shall be filed with the Secretary of State, and in submitting the same to the people he * * * shall be guided by the general laws and the act submitting this amendment, until legislation shall be especially provided therefor".

There cannot be a valid election unless it is held pursuant to law. *State ex rel. Everding v. Simon,* supra. *Equi v. Olcott,* 66 Or. 213 (133 P. 775); *State ex rel. Swan v. Kozer,* 115 Or. 638 (239 P. 805). The secretary of state must find his authority to submit initiative or other measures, pursuant to some law.

"* * * It is manifest that the Secretary of State, as directed by the people in its Constitution already quoted, must be guided by the general laws on the subject involved. In the face of this mandate of the people, that officer cannot find any justification in the special act mentioned authorizing him to submit any

initiative measure to the people during the present year. It is well settled that unless there is authority of law for an election it cannot be held. State ex rel. Everding v. Simon, 20 Or. 365 (26 Pac. 170); Andrews v. Neil, 61 Or. 471 (120 Pac. 383, 123 Pac. 32). Of course under the sanction of the initiative and referendum system the people have a right to legislate independent of the legislative assembly, except as they themselves by their own Constitution have set metes and bounds upon this reserved power * * *. In short, as plainly declared by the people in the Constitution 'the Secretary of State shall be guided by the general laws' in matters of this kind. He cannot rightfully enlarge the provisions of the special act of February 28, 1913, to include matter not therein specified, and this court has no power to direct him so to do, or to violate the express mandate of the people embodied in the Constitution, requiring him to operate under the general laws". Equi v. Olcott, supra.

"When an election is held for a specified, particular purpose, no other matters may be submitted at such election". Henderson v. Salem, 137 Or. 541 (1 P. (2d) 128, 4 P. (2d) 321).

Chapter 321 of Oregon Laws, 1913, under consideration in *Equi v. Olcott,* supra, provided for a special election in which "all measures passed by the twenty-seventh legislative assembly * * * upon which the referendum may be invoked, should be submitted * * *".

There are two ways under our constitution by which the referendum powers, reserved by the people, may be invoked. "* * * It may be ordered * * * by the petition signed by five per cent of the legal voters, or by the legislative assembly, as other bills are enacted * * *". Oregon Constitution, Article IV, § 1.

It will be observed that said chapter 440 makes no mention of initiative measures. It says, "* * * all measures or enactments passed by said assembly and which are or may be referred * * *". The thirty-sev-

enth legislative assembly referred some "measures" to the people which would not become laws until approved by the voters. It perceived that some of its enactments, that would ordinarily become laws ninety days after its adjournment, might be subjected to a referendum by a petition, and the language so used limited the election to "measures or enactments" passed by said assembly whether referred by the legislature or by petition. Section 2 of the act provides for the arguments for or against said "amendments or measures". Section 3 provides for a true copy "of the title and text of each amendment and measure". Section 4 provides for ballot titles for "constitutional amendments or enactments". This indicates that it was the legislative intent to use "measure" and "enactment" in section 1 of the act synonymously.

Plaintiff contends that because the title of the act refers to "any measures against which the referendum may be invoked, or which may be initiated by the people", therefore the act was intended to be as broad as its title. The answer to this contention is, that the act is not. The title is frequently an aid to the interpretation of an act. The phrase, in the title referred to, is susceptible of two different constructions. It can be reasoned that the legislature, at the time of preparing the title, intended to provide for initiative measures at said special election and then deliberately omitted such provision from the body of the act. It would have been an easy matter to have used as apt words in the body of the act as in the title. We must look to the words in the body of the act for the authority of the secretary of state. *State ex rel. Everding v. Simon,* supra.

The proposed initiative measure is an attempt to amend the constitution of the state. Said chapter 440

provides that the special election is called for the purpose of submitting to the people "all proposed amendments to the constitution of the state of Oregon submitted by the thirty-seventh legislative assembly * * *". It was evidently the intention of the legislature to limit the election, so far as constitutional amendments were concerned, to those submitted by said assembly. The maxim, "Where one is included, the others are excluded", while not always a sure test, is of value in the interpretation of the instant statute.

The demurrer should be sustained and the petition dismissed.