Argued February 15; affirmed March 6, 1945

HOWELL *v.* BAIN ET AL.

(156 P. (2d) 576)

Before BELT, Chief Justice, and ROSSMAN, KELLY, BAILEY, LUSK, BRAND and HAY, Associate Justices.

*Robert F. Maguire,* of Portland (Arthur I. Moulton, John H. Kelley, K. C. Tanner, Edward J. Clark, Robert F. Maguire, and Robert O. Boyd, all of Portland, on the brief), for appellant.

*Earl Bernard,* of Portland (Earl Bernard and Frank S. Sever, both of Portland, on the brief), for respondent James R. Bain.

*George Neuner,* Attorney General, for respondents Earl Snell and Robert S. Farrell Jr.

BELT, C. J.

This is a suit brought under the declaratory judgment act to determine the validity of an election to fill the vacancy in Department No. 3 of the Circuit Court for Multnomah county caused by the death of Judge Robert Tucker who died on May 2d, 1944. There is no dispute as to the facts. The controversy concerns the law applicable to the facts and the construction of the nonpartisan judiciary act (§§ 81-1201 to 81-1207, inclusive, O. C. L. A.).

On May 6, 1944, Governor Snell, by virtue of Art. V, § 16, of the Constitution of Oregon, appointed Franklin C. Howell to fill such vacancy until his successor was elected and qualified. Judge Howell accepted the appointment and duly qualified for the office. The vacancy having occurred less than 20 days before the primary election on May 19, 1944, it is conceded that no candidate could be lawfully nominated at that time for such office. As a matter of fact, no candidate attempted to be thus nominated.

On July 10, 1944, an assembly of electors in Multnomah county—pursuant to § 81-1001, O. C. L. A., a part of the general election laws—nominated the defendant James R. Bain as candidate for the office in question and a certificate of such nomination was filed in the office of the secretary of state. Later, John R. Mears and the plaintiff Franklin C. Howell, were also thus nominated as candidates for such office by different assemblies of electors and their respective certificates of nomination were timely filed in the office of the secretary of state. Each of the candidates also

filed with the secretary of state a written acceptance of such nomination.

It is stipulated that the secretary of state, within the time prescribed by the general election laws, transmitted to the county clerk of Multnomah county a certified list of offices to be filled at the general election on November 7th, 1944, and included therein was the office of Judge of Department No. 3 of the Circuit Court for Multnomah county. It is also stipulated that the secretary of state certified to the county clerk that Franklin C. Howell, James R. Bain, and John R. Mears were nominated for that office. It is agreed that the county clerk prepared the "Official Judiciary Ballot" for Multnomah county, Oregon, at the general election to be held on Tuesday the 7th day of November, 1944, and provided a space thereon for the election of a judge of the above mentioned department of the Circuit Court. A copy of the official ballot concerning the candidates in question appears below:

"For Judge of the Circuit Court, Fourth Judicial District, Multnomah County, Department Number Three VOTE FOR ONE.

| 16 | BAIN, JAMES R. of Multnomah County | Independent |
|----|------------------------------------|-------------|
| 17 | HOWELL, FRANKLIN C. of Multnomah County | Independent |
| 18 | MEARS, JOHN R. of Multnomah County | Independent |

It is observed that there was a blank space on the above official ballot to enable the voter, if he so de-

sired, to vote for some person other than those candidates whose names were printed on the ballot.

The official canvass of the election returns disclosed that 52,837 votes were cast for James R. Bain; 43,430 for Franklin C. Howell; and 41,119 for John R. Mears. The governor, on December 7, 1944, issued a certificate of election to the defendant Bain.

Appellant Howell, who was defeated in the election, now asserts for the first time that it was null and void. He does not challenge the accuracy of the election returns. Neither does he contend that the election was not fairly and honestly conducted. It is his contention that the nonpartisan judiciary act is a complete and exclusive method of nominating and electing judges and that there is no statutory authorization for filling the vacancy. It is urged that the statute (§ 81-1001, O.C.L.A.) invoked by himself and the other candidates to obtain the nomination and thereby have their names printed on the "official ballot" has no application and is in conflict with the nonpartisan judiciary act. Appellant further asserts that a judge elected thereunder must obtain a majority of the votes cast. Defendant Bain received a plurality of the votes.

We agree that an election, in order to be valid, must be authorized by law *(State v. Hayworth,* 152 Or. 416, 53 P. (2d) 1048; *State ex rel. v. Hoss,* 143 Or. 383, 22 P. (2d) 883; *State ex rel. v. Kozer,* 115 Or. 638, 239 P. 805) and that there must be some constitutional or statutory authority for filling a vacancy in office notwithstanding it is an elective one: 42 Am. Jur. 975, Public Officers, § 130. In other words, an election to fill a vacancy is of no effect where there is no provision in law for it. It is equally well settled that the

policy of the law is to fill a vacancy in public office as soon as it can be legally accomplished.

To the end that the people may have an early opportunity to exercise the sovereign right of franchise and thus express their opinion concerning matters of vital interest to them, the following constitutional amendment was adopted (Art. V, § 16, Constitution of Oregon):

> "When during a recess of the legislative assembly a vacancy shall happen in any office, the appointment to which is vested in the legislative assembly, or when at any time a vacancy shall have occurred in any other state office, or in the office of judge of any court, the governor shall fill such vacancy by appointment, which shall expire when a successor shall have been elected and qualified; *if any vacancy occur in the office of United States senator or in any elective office of the state or of any district, county or precinct thereof, the same shall be filled at the next general election, provided such vacancy occur more than twenty (20) days prior to such general election.*" (Italics ours.)

That part above italicized was added by referendum amendment approved by the people in 1926. In this provision of the constitution, the intention of the people is clearly manifested that the vacancy in an elective office must be filled at the next general election, if the vacancy occurs more than 20 days prior to such election. There is nothing uncertain or ambiguous about this constitutional mandate. There is no need of construction. It speaks in no uncertain terms. True, this section of the constitution is not self-executing in that it does not purport to provide for the election or the manner and method of conducting the same. The necessity of legislative enactments to effectuate the purpose of the constitution is evident. The logical

inquiry, therefore, is whether there is authorization for a general election. Next, can the vacancy be filled at such election.

Art. II, § 14, Constitution of Oregon, in reference to time of holding elections, provides that "the regular general biennial election in Oregon for the year A. D. 1910, and thereafter shall be held on the first Tuesday after the first Monday in November." Section 81-1401, O.C.L.A. provides:

"A general election shall be held in the several election precincts in this state on the first Tuesday after the first Monday in November, 1920, and biennially thereafter * * * * *."

at which certain enumerated officers are to be elected, including "judges of circuit courts."

It thus appears that an election was authorized by law to fill the vacancy. Next, we inquire as to whether there is any statutory provision authorizing the nomination of candidates and the printing of their names on the official ballot as was done in the instant case. Were such nominations authorized by the assembly act (§ 81-1001, O.C.L.A.) or by the nonpartisan judiciary act (§§ 81-1201, et seq. O.C.L.A.)?

Section 81-1201, O.C.L.A., of the nonpartisan judiciary act originally enacted in 1931 (Ch. 347, Laws of Oregon 1931), provides:

"Candidates for the offices of judge of the supreme, circuit and district courts shall be nominated and voted for at the primary and general elections in this state, as herein provided, and not otherwise."

Section 81-1207, O.C.L.A., however, provides that all election laws relating to the nomination and election of candidates for office shall apply to the nomination

and election of judges except where in conflict with such act.

■ The nonpartisan judiciary act is a special statute providing for a new and unique method of nominating and electing judges. To the extent that it applies or is operative it excludes all other methods, but it was never intended to apply to the case of a vacancy in judicial office arising after the time when the names of candidates can go on the ballot to be voted on at the primary election. Section 81-1201, O.C.L.A., was not intended to repeal or exclude other methods of selecting judges provided by statutes already in existence and applicable to situations not covered by the nonpartisan act, such as the present case. There may be a hiatus, but it is confined to the nonpartisan act which fails to take into account such exigencies.

The nonpartisan act makes no provision for the nomination of candidates and the printing of their names on the official ballot, where a vacancy has occurred as in the instant case. The legislature, in the enactment of such act, simply failed to cover the situation with which we are now confronted.

■ Can we then turn to the assembly act, in so far as it is not in conflict with the nonpartisan act, in order to comply with the constitutional mandate that the vacancy shall be filled at the next general election? Certainly, if the court can reasonably invoke any provisions of the election laws to effectuate such purpose, it is its duty to do so.

The assembly act was originally enacted in 1891 (page 18, § 31, General Laws of Oregon 1891), and, so far as material herein, provided:

"Any convention of delegates, and any assembly of electors, as hereinafter defined, and also in-

dividual electors to the number hereinafter specified, by causing a certificate of nomination to be duly prepared and filed in the manner hereinafter provided, may nominate *one candidate for each public office* to be filled at the election, whose name shall be placed upon the ballots to be furnished as hereinafter provided. * * * * * * * An assembly of electors, within the meaning of this act, is an organized body of not less than 100 electors of the State, or electoral division thereof for which the nomination is made." (Italics ours).

The above act, as amended is codified as § 81-1001, O.C.L.A.

Section 81-1007, O.C.L.A., of the general election laws, provides:

"All certificates of nomination of candidates for any office to be voted for in the state at large, or for state senator or representative in the legislative assembly, *or judge of the circuit court*, district or prosecuting attorney, or in any other district composed of one or more counties, shall be filed with the secretary of state. * * *" (Italics ours).

■ The assembly act contains provisions for the nomination of candidates for the office of judge as of every other public office to be filled at the election. These nominations may be either as independents or as the nominees of political parties not covered by the general primary nominating law. The assembly act may be used to fill a vacancy arising, as in this case, if it does not conflict with the nonpartisan act—although out of harmony with the policy of that act—because, as stated, the nonpartisan act was not intended to cover the present situation. In so far as the provisions of the assembly act might be invoked for the purpose of making additional nominations for the office of judge, after nominations made at the

primaries pursuant to the provisions of the nonpartisan act, they would be obviously in conflict with the latter act and, to that extent, therefore, must be considered repealed. But the assembly act is still effective for the purpose of the nomination of candidates for judge, in the present circumstances, by an assembly of electors.

If it should be considered that the nonpartisan act was intended to cover the whole field of the election of judges, i. e., to exclude any other method even in the case of a vacancy arising in the circumstances of this case, then, of course, the assembly act, in so far as it provides for the nomination of candidates for the office of judge, would have to be held in irreconcilable conflict with the nonpartisan act and, therefore, to have been repealed.

But, under this view, the nonpartisan act would be rendered, to that extent at least, unconstitutional, because it would conflict with Art. V, § 16, of the Oregon constitution by making it impossible to fill the vacancy "at the next general election". The legislature might fail to implement Art. V, § 16, and the constitutional mandate, as a result, would fail of its purpose. It is, however, quite a different thing for the legislature to take affirmative action which is inconsistent with the constitution.

■ The language of the assembly act is unquestionably broad and comprehensive enough to authorize the nomination of judges, as well as other public officers, and, as a matter of fact, it has been so construed by administrative officers since the adoption of the nonpartisan act in 1931. Gale Hill, who was judge of the circuit court, Department No. 2, of the then Third Judicial District, died in May, 1932. The vacancy

caused by his death was too near the May primary nominating election and it could not be filled at that time. The governor appointed Judge L. G. Lewelling to fill the vacancy until his successor was elected and qualified. Thereafter, Lewelling and C. H. Inman were nominated pursuant to the provisions of the assembly act and their names appeared upon the official ballot at the general election in November. Judge Lewelling was elected and there was no contest of the election. Such contemporaneous construction, while not controlling, is persuasive.

■ The legislature, in passing the nonpartisan judiciary act, never intended, as plainly evidenced by § 81-1207, O. C. L. A., to repeal the assembly act in its entirety. The nonpartisan act could not operate without resorting, to some extent, to the provisions of the general election laws. The nonpartisan act, being a statute pertaining to a particular subject, repealed, by implication, only those provisions of the general election laws in conflict therewith: *Banfield v. Schulderman,* 137 Or. 167, 296 P. 1066, 298 P. 905; *State v. Thompson,* 134 Neb. 739, 279 N. W. 462; *State v. Penrod,* 102 Neb. 734, 169 N. W. 266; *State ex rel. Luhman v. Hughes,* 46 N. D. 399, 179 N. W. 717; 1 Lewis Sutherland Statutory Construction, § 247. This rule of statutory construction is so well established that further citation of authorities is deemed unnecessary.

Bain, Howell, and Mears having been thus nominated, it was the duty of the secretary of state, as provided in § 81-1402, O. C. L. A.—general election laws—"not less than forty-five days before any general election, and not less than twenty days before any special election" to "prepare and furnish to each county clerk a statement showing the several state and

district offices to be filled in his county at such election * * *'' and, also, to certify to such officer the candidates nominated for such offices: § 81-1307, O. C. L. A. Section 81-1501, O. C. L. A., provides, under the general election laws, for the printing and furnishing of the ballots by the county clerk. We think there can be no doubt about the existence of adequate election machinery to enable the people, through the exercise of their right of franchise, to fill the vacancy at the general election in November.

■ It would follow from what has been said that not only was there a valid election but also that the candidates were nominated in a manner provided by law and their names, with the word, ''independent'' opposite each of them, were properly placed on the ballot. It should be distinctly understood, however, that, when candidates for judge have been nominated under the provisions of the nonpartisan act or have had an opportunity to be so nominated, the assembly act would then have no application and no nomination for such office could be made thereunder.

It is, of course, desirable to guard against encroachments on the nonpartisan judiciary act and it is unfortunate that legislation has not been enacted to preserve to the full extent the policy of such law when vacancies as in the instant case occur. It may be that the legislature could remedy the situation by amending the assembly act so as to provide, in the case of a vacancy in the office of judge, occurring after a time when candidates could be voted for in the primary election, that nominees for that office by an assembly of electors should place after their names the word, ''nonpartisan'' and be allowed to use only a ten word

statement such as is now permitted under the nonpartisan act.

■ Even assuming that the wrong method was followed in the nomination of these candidates and that their names were improperly printed on the official ballot, it does not follow that, by reason thereof, the election would be null and void. At most, it would be irregular. If plaintiff had any objection as to the procedure followed, it was his duty to complain before the election and not after the votes were counted: *Gillaspie v. McKinney,* (Tex.) 24 S. W. (2d) 764; *Hogins v. Bullock,* 92 Ark. 67, 121 S. W. 1064, 19 Ann. Cas. 822. Of course, if the election were null and void, there would be no estoppel involved, even though he participated therein.

As is so clearly stated in 29 C. J. S. 309, Elections, § 214:

"Voters who have done all in their power to cast their ballots honestly and intelligently are not to be disfranchised because of an irregularity, mistake, error, or even wrongful act, of the officers charged with the duty of conducting the election, which does not prevent a fair election and in some way affect the result. Elections should never be held void unless they are clearly illegal; it is the duty of the court to sustain an election authorized by law if it has been so conducted as to give a free and fair expression of the popular will, and the actual result thereof is clearly ascertained. It has even been held that gross irregularities not amounting to fraud may not vitiate an election."

In 18 Am. Jur. 263, Elections § 131, it is said:

"It is a firmly established general rule that objections to irregularities in the nomination of a candidate should be taken prior to election. Voters finding a ticket or the names of candidates on the

official ballot are not required to determine whether they are entitled to a place thereon, but may safely rely on the action of the officers of the law and on the presumption that they have performed their duty. Thus, an election in which the voters have fully, fairly, and honestly expressed their will is not invalid because the certificate of nomination of the successful candidate is defective through the omission of some detail; nor is the title of the successful candidate affected by a subsequent decision holding the law under which the nominations were made invalid. In fact, an election is not necessarily void even though ballots which contain the name of a person who has not been certified as nominee are used. * * *.''

The same well established principle was thus announced by this court in *Miller v. Pennoyer*, 23 Or. 364, 31 P. 830:

'' * * * in the absence of an affirmative declaration in the statute that a ballot containing the name of a candidate in more than one place is void and shall not be counted, we are unable to agree to the doctrine that an error of the county clerk in construing a doubtful provision of the law should disenfranchise a large number of voters who are in no way responsible for the error or mistake. * * * Unless the law is clearly mandatory, or in some way declares the consequences of a departure from its provisions, the court ought not to defeat the will of the people, when fairly expressed, because of some technical error or mistake in the form of the ballot; and in this case there is no claim or suggestion of fraud on the part of any one, or that the returns now in the possession of the secretary of state do not correctly represent the will of the people as expressed at the polls.''

 Bain received only a plurality of the votes. Appellant contends that a majority of the votes is neces-

sary for election. We think a plurality is sufficient. Art. II, § 16, of the Constitution of Oregon, provides that "In all elections authorized by this constitution until otherwise provided by law, the person or persons receiving the highest number of votes shall be declared elected * * *" There is no statute declaring that a majority of votes is essential to election. Under the general election laws (§ 81-1503, O. C. L. A.), it is provided:

"* * * There shall be left at the end of the list of candidates for each different office blank spaces, in which the elector may write the name of any person not printed on the ballot for whom he desires to vote as a candidate for such office. * * *"

A voter has the constitutional right to vote for whomever he pleases and, if the names of the candidates on the printed ballot do not meet with his approval, he may "write in" the name of the person whom he desires to have elected to the office: *State ex rel. v. Kozer*, 112 Or. 286, 229 P. 679; *Hendricksen v. Clark*, 102 Or. 250, 201 P. 1071; *State ex rel. v. Thompson*, supra; *Adair v. McElreath*, 167 Ga. 294, 145 S. E. 841; 18 Am. Jur. 307, Elections § 191; 29 C. J. S. 263, Elections § 180. As said in McCreary on Elections (4th Ed.) 508, § 700:

"Statutes which deny the voter this privilege are in conflict with the constitutional provisions guaranteeing the right of suffrage to every citizen possessing the requisite qualifications and are void. Legislatures may provide for the printing of an official ballot and prohibit the use of any other, but they cannot restrict the elector in his choice of candidates, nor prohibit him from voting for any other than those whose names appear on the official ballot."

Assume that A's name is the only one printed on the ballot in the November election and that 1,000 votes are cast for him; B has 600 "write in" votes; and C, 1,500 "write in" votes. Under appellant's theory, there would be no election as no person received a majority of the votes cast. We think C, having received a plurality of the votes, would be elected.

Authorities cited from other jurisdictions are not very helpful because of the difference in the constitutional and statutory provisions involved and we shall not extend this opinion by discussing them at length. Cases where timely objection has been made, such as *Anderson v. Cook,* 102 Utah 265, 130 P. (2d) 278, 143 A.L.R. 987, a mandamus proceeding to compel the clerk to issue a certificate of nomination, are not in point. *State v. Reeves,* 15 Wash. (2d) 75, 129 P. (2d) 805, is in the same category as it was a mandamus proceeding to compel the secretary of state to place relator's name on the judicial ballot. In *State ex rel. Ferguson v. Superior Court,* 140 Wash. 636, 250 P. 66, the court held the election illegal because of failure to give the statutory thirty days' notice prior to the election. Obviously, such case is not in point. Here, no primary election was held. The time of the general election is fixed by law. There is statutory provision for filling the vacancy at such election.

This case has received the careful consideration of every member of the court and we are convinced that the election is valid.

It follows that the decree of the circuit court sustaining the validity of the election of James R. Bain as judge of the circuit court, Department No. 3, for Multnomah county, is affirmed.